[Civ. No. 13227.   Second Dist., Div. Two.   May 1, 1942.]

JOHN MICHAEL CAMPBELL, a Minor, etc., et al., Respondents, v. CITY OF SANTA MONICA (a Municipal Corporation), Appellant.

Jennings & Belcher and Louis E. Kearney for Appellant.

Joseph Scott, J. Howard Ziemann and Cuthbert J. Scott for Respondents.

HANSON, J. pro tem.—The question for decision is whether the defendant city is liable for injuries sustained by plaintiff John M. Campbell, a minor, as a result of being struck by a privately owned automobile driven by a member of the public along a wide sidewalk known as the "Promenade."

The Promenade, or sidewalk, located in the city of Santa Monica, runs parallel to the Pacific Ocean and immediately adjacent to its beach for a distance of approximately two miles. The Promenade is of concrete and is twenty feet in width. As indicated, it is a promenade or walk for the use of pedestrians, and is in no sense a highway for general public use. However, owing to its substantial construction and width an ordinance of the city authorizes its chief of police under certain conditions to grant special permits to trades people to drive upon it for the special purpose of making deliveries of merchandise to residents who live alongside of it, whether they do or do not have direct means of egress and ingress to the main traveled thoroughfare, Roosevelt Highway, that parallels it some one hundred feet to the east. Otherwise, the ordinance in question bars all vehicular traffic upon the Promenade as well as on all other sidewalks in the city except at and within intersections with driveways or streets. A street known as Colorado runs east and west in Santa Monica across the Promenade to a large pier in the ocean, onto which vehicular traffic is permitted. Immediately to the south of Colorado Street is Moss Street, which runs parallel to Colorado Street and which also crosses over the Prome-

nade and terminates at the pier without requiring the use of the Promenade except as a point for crossing.

At the time of the accident an overhead crossing or bridge was being erected from the pier above the Promenade and the highway which parallels it. At the time, the bridge construction which was being carried on blocked traffic along the highway. Accordingly, a motorist coming on the highway from the south was compelled at Moss Street, the first street to the south of Colorado, to turn left onto that street, as it was blocked to the east. Upon turning left his way led to the pier. However, Seaside Street, immediately to the south of Moss Street and running parallel to it, had a large "detour" sign with an arrow pointing to the right, which was plainly visible to motorists. The defendant Hoyt, who was driving a car owned by defendant Schmalzer, wishing to drive north, disregarded the sign at Seaside and, finding his way blocked at Moss Street, turned to the left, as he could not there turn to the right. As a consequence he found his only alternative to driving onto the pier, and there turning around and retracing his route, was to turn onto the Promenade. This he did, and after he proceeded on it for about a mile he struck and seriously injured the minor plaintiff, who was in the act of running across the Promenade.

While plaintiffs named the driver and owner of the car as defendants along with the city of Santa Monica, they dismissed their action against them on the trial and proceeded only against the city and its officers. The trial court, sitting with a jury, directed a verdict in favor of the city's officials other than the mayor, but refused to direct a verdict in favor of the city and its mayor. The jury returned a verdict in favor of the mayor but against the city, and assessed the total damage in the sum of $11,905.

Plaintiffs predicated liability against the city on the theory that it was proximately negligent (1) in permitting vehicular traffic on the Promenade, (2) in not erecting signs or barriers to prevent automobiles from using the Promenade, and (3) in not erecting signs to warn pedestrians of the presence of vehicular traffic on the Promenade. The case was submitted to the jury on these grounds. In the view we take of the case we see no actionable negligence on the part of the city on the record submitted to us. For that reason we shall have no occasion to discuss rulings on evidence nor some of the challenged instructions which are claimed to be prejudicial.

The problem before us is not one of legal causation, which is argued at length, but of defining the boundaries of municipal liability. It is axiomatic that a city is liable only for its own shortcomings. ■ Where a city provides streets or sidewalks, or both, it does so with the expectation that motorists and pedestrians will make a lawful and not an unlawful use of them. The fact that the city may reasonably foresee that some motorists and pedestrians will use them in a negligent manner to the injury of others does not make it a joint tort feasor with every motorist or pedestrian who uses them to the injury of another. ■ While a city may by ordinance prohibit a misuse or negligent use of its streets and sidewalks, its failure to enforce such an ordinance imposes no liability upon it, in the absence of statute. This is so regardless of whether its failure is occasioned by want of barricades or signs or by want of necessary police officers. In the instant case the city, although not required to do so, posted detour signs at the very points such signs would be of help to a motorist who chose to regard them rather than to disregard them. The city did all and more than it was required to do. By statute the cities of this state are required, where they provide streets and sidewalks, to construct and maintain them so that they are neither defective nor dangerous to the traveling public. But neither this statute nor any other imposes a duty upon the city to control their use so as to avoid accidents upon them. ■ By making and enforcing ordinances regulating the use of streets and sidewalks the city exercises a governmental power, and so for any breach thereof there is no liability.

What duty, then, did the city owe to the plaintiffs? The answer is, none, except for such rights, if any, as are accorded by the Public Liability Act. ■ The question as to the extent of the duties which are imposed by that act is one of law, to be determined by the court, and not one of fact for the jury. ■ Under the act mentioned the city is liable only for a "dangerous or defective condition of [its] public streets . . . and property." The scope of the protection afforded by the statute is against a physically dangerous or defective condition of streets and sidewalks. The statute is not designed to protect against moving objects such as motor vehicles upon streets or highways, but only as to risks directly due to a physically dangerous or defective street or sidewalk. Here the Promenade itself was neither dangerous nor defective.

The harm in this case was caused, not by the condition of the Promenade or the want of barriers or signs barring its use by vehicles without a permit, but by the negligent operation of a motor vehicle. It rested with the legislative body of the city to regulate the use of the Promenade. That body chose to restrict its use to pedestrians and motor vehicles which held a permit from its chief of police. It could have restricted the use to pedestrians only or to motorists only, or permitted its use by both. The city owed the plaintiffs no duty to restrict the use nor to barricade against motorists who did not hold permits to use it. The Promenade is not dangerous nor defective just because it is so constructed that motor vehicles can readily drive upon and along it.

Upon the evidence in this case there was nothing to submit to the jury, and so the city's motion for a directed verdict should have been granted.

Judgment reversed.

Wood (W. J.), Acting P. J., and McComb, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied June 29, 1942. Carter, J., voted for a hearing.