[Civ. No. 15831. First Dist., Div. Two. May 25, 1954.]

WILLIAM A. BRYANT, Appellant v. COUNTY OF MONTEREY, Respondent.

Fahey, Castagnetto & Gallen and Milton L. Ageson for Appellant.

Hoge, Fenton & Jones for Respondent.

NOURSE, P. J.—This is an action for personal injuries brought by William A. Bryant against County of Monterey, Jack L. McCoy, Sheriff of the County of Monterey, Bert Cahoon, Deputy Sheriff, and the Massachusetts Bonding and Insurance Company.

After the sustaining of a demurrer to the original complaint (filed by the defendants who are not a party to this appeal) plaintiff served a first amended complaint on all the defendants. All demurred, the county for the first time. The demurrers of defendants McCoy, Cahoon and Massachusetts Bonding and Insurance Company were overruled and the demurrer of the County of Monterey was sustained without leave to amend. Appellant appeals from the judgment entered following the sustaining of the demurrer of the defendant Monterey County. This appeal is taken on the judgment roll and is concerned only with the judgment for the county.

The first amended complaint sets forth two causes of action. (1) Plaintiff alleges that on December 30, 1951, he was lawfully incarcerated in the Monterey County jail at Salinas, California, where he there came under the care of defendants McCoy and Cahoon; that there existed at the time in the jail where plaintiff was confined an illegal "kangaroo court," the existence of which was known to the sheriff and his deputy; that having incurred the displeasure of the prisoners controlling the "kangaroo court" plaintiff was severely beaten and kicked, injuring his face, body and particularly his left eye. (2) The second cause of action alleges that immediately after said assault it became known to defendants McCoy and Cahoon that plaintiff was in need of medical treatment, but that for a space of three and one-half days following the assault defendants negligently and carelessly failed and neglected to provide plaintiff with necessary medical treatment and that as a proximate result of the failure to receive medical treatment plaintiff permanently lost the sight of his left eye.

In his argument on the demurrer appellant had based his case solely on the Public Liability Act. He now contends that while his principal point is that the demurrer should

not have been sustained because of the provisions of the Public Liability Act, certain sections of the Penal Code are also controlling, namely, 4019.5, which makes it unlawful for any sheriff, deputy sheriff, etc., to permit "kangaroo courts" to operate, and sections 4000-4024 which set up the rules and regulations concerning county jails and the duties of persons in charge of such jails. Appellant contends the political subdivision in charge of the jail should not be allowed to escape liability when there is a departure from the protective rule set up by the law solely on the ground that no "structural defect" is involved.

The controlling question presented on appeal is whether the county is liable for damages under the "Public Liability Act" as contained in Government Code, sections 53050 through 53056. Section 53051 reads: "A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

"(a) Had knowledge or notice of the defective or dangerous condition.

"(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

In support of his contention that the county was liable under the Public Liability Act, appellant cites *Bauman* v. *San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989], and *Harper* v. *Vallejo Housing Authority,* 104 Cal.App.2d 621 [232 P.2d 262]. Both cases held that the act applied to public agencies maintaining a public playground or recreation center. This was in accord with numerous earlier authorities.

Respondent contends that statutes in derogation of sovereign immunity will be strictly construed, quoting from *Dineen* v. *San Francisco,* 38 Cal.App.2d 486, 494 [101 P.2d 736]: ". . . by the passage of the Public Liability Act, the legislature has properly determined the extent of the liability of governmental agencies. The liability so fixed should not be unduly extended by judicial construction." In *Campbell* v. *City of Santa Monica,* 51 Cal.App.2d 626, 629 [125 P.2d 561], the court held that: "Under the act mentioned [Public Liability Act] the city is liable only for a 'dangerous or defective condition of [its] public streets . . . and property.' The scope of the protection afforded by the statute is against

a physically dangerous or defective condition of streets and sidewalks. The statute is not designed to protect against moving objects such as motor vehicles upon streets or highways, but only as to risks directly due to a physically dangerous or defective street or sidewalk.''

The theory of the cases is that the Public Liability Act applies only when a party is injured where the public property is used by him in the ''ordinary, usual and customary use thereof.'' (*Beeson* v. *City of Los Angeles*, 115 Cal.App. 122 [300 P. 993]; *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708 [178 P.2d 472]; *Loewen* v. *City of Burbank*, 124 Cal.App.2d 551, 553 [269 P.2d 121].)

The scope of the Public Liability Act is a question of law to be determined by the court. Under it the agency is liable ''for a dangerous or defective condition of its . . . property.'' The question of the liability of the public agency for negligence of its employees presents an entirely different problem. That such an agency is not liable for the torts of its public officers, see *Oppenheimer* v. *City of Los Angeles*, 104 Cal.App.2d 545, 548 [232 P.2d 26], where the court said: ''The demurrer of the city was properly sustained. A municipality cannot be held in damages for the torts of its police officers acting in a governmental capacity. (*Stedman* v. *San Francisco*, 63 Cal. 193; *Brindamour* v. *Murray*, 7 Cal.2d 73, 78 [59 P.2d 1009]; *Wood* v. *Cox*, 10 Cal.App.2d 652, 653 [52 P.2d 565]; *Abrahamson* v. *City of Ceres*, 90 Cal.App.2d 523, 526 [203 P.2d 98].) A municipal corporation exercises a purely governmental function in maintaining and operating a jail.''

On this point the authorities are uniform. *Wood* v. *Cox*, 10 Cal.App.2d 652 [52 P.2d 565], cited in the Oppenheimer case, contains a long list of cases to the same purport and also cites McQuillin's Municipal Corporations, 2d ed., section 2591, reading: '' 'A municipality is not liable for false imprisonment by police officers; illegal arrest or wrongful acts in making an arrest; unjustifiable assault in making an arrest; arresting and carrying to jail a person too sick to bear the removal. . . . On the same theory, a municipality is not liable to prisoners for injuries received during imprisonment from the negligent or malicious acts of police or other officers, such as failure to provide a convict with proper medical attention.' '' The text of the early edition has been modified in the third edition of McQuillin without change in the conclusions of the author. See sections 53.80 and

53.94 of the third edition. Particularly applicable is the statement in the latter section that the public corporation is "not liable for injuries received from fellow prisoners."

The same rule is stated in 41 American Jurisprudence, page 896, where it is said: "The doctrine of respondeat superior is not applicable to a state, and the latter is not liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers or agents, unless it voluntarily assumes liability in such a case."

The second cause of action relates to the failure of the sheriff and his assistant to furnish the plaintiff necessary medical assistance for treatment of injuries received from his fellow prisoners. The question of the liability of the county rests on the same principles as those discussed. It was expressly held in *Nisbet* v. *City of Atlanta*, 97 Ga. 650 [25 S.E. 173], that the municipality was not liable for such neglect.

The question of the freedom from suit of a county in cases of this nature is all the more clear when the suit is against a county than when a municipal corporation is defendant. A county is merely an agency of the state exercising such limited powers and duties as the state may delegate to it. A municipality is a corporation exercising such powers and duties as are assumed under its municipal charter. Thus, if a municipality is not liable under a case of this kind, a county is so much the less liable unless the Legislature has expressly declared such liability. Since there is no statute fixing such liability on the county none can be assumed by implication or by what is called "interpretation."

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.