[Civ. No. 18993.   First Dist., Div. One.   June 27, 1960.]

PAUL LEWIS JONES, a Minor, etc., Appellant, v. ROBERT CZAPKAY et al., Defendants; Dr. H. D. CHOPE et al., Respondents.

194

Ernest O. Meyer and James A. Himmel for Appellant.

Stanley Mosk, Attorney General, Robert L. Bergman, Deputy Attorney General, Ropers, Majeski & Kane, Keith C. Sorenson, District Attorney, L. M. Summey, Deputy District Attorney, and Robert J. Popelka for Respondents.

BRAY, P. J.—Appeal by plaintiff from a judgment after order sustaining demurrers of certain defendants without leave to amend and of other defendants with leave to amend.*

## QUESTIONS PRESENTED

Is there any liability for communication of tuberculosis from a known tubercular victim, by

(a) Doctors Chope or Bodie in their official capacities or individually;

(b) County of San Mateo or city of Burlingame;

(c) Doctors Merrill or Kupka in their official capacities or individually?

## RECORD

The second count of the complaint is directed against Doctors Chope and Bodie individually. It alleges that Doctor Chope is and was the Director of the Health and Welfare

---

*Although Robert Czapkay was made a defendant, the record shows no appearance by him in the action, nor is his position as a defendant discussed in any of the briefs. Therefore, ''defendants'' as used herein will not include him. The first count is directed against Czapkay alone, and hence will not be discussed.

Department of San Mateo County and that Doctor Bodie is and was in charge of the Communicable Disease Division of said department; that for more than six years past, both knew that Czapkay was afflicted with infectious and contagious tuberculosis; that about 1952 Doctor Chope as director issued and had served upon Czapkay an order isolating and quarantining him to his residence in Burlingame; that said defendants failed and neglected to enforce the provisions of the California health and safety statutes pertaining to quarantine and isolation and to place a placard on Czapkay's premises as required by section 2561, Health and Safety Code, to give any notice to the citizens and residents of Burlingame, and to plaintiff, of the existence of said communicable and infectious disease, to conduct proper or adequate investigation to insure strict compliance by Czapkay with said order; that by reason of said carelessness of defendants, plaintiff's health was endangered and plaintiff Paul Jones came in immediate communication with Czapkay, causing him to contract tubercular meningitis, damaging plaintiff in the sum of $350,000.

The third count is directed against the County of San Mateo and the two doctors in their official capacity, realleges by reference the allegations of the second count, alleges that defendant county at all times maintained a public health department, that by reason of the carelessness of the defendants Central Avenue and Newlands Avenue in Burlingame, and other public streets in the cities of Burlingame and San Mateo and highways in San Mateo County were rendered dangerous, hazardous and unfit for ordinary use by the public due to their exposure to infectious and contagious tuberculosis, and the health and safety of the general public and plaintiff were endangered, and thereby plaintiff by coming in direct communication with Czapkay contracted tubercular meningitis.

The fourth count is directed against the city of Burlingame and the two doctors in their official capacity, and realleges the charging portions of counts two and three, and alleges that Burlingame contracted with San Mateo County for the services of its health and welfare departments and by reason of said contract said doctors were servants, agents and employees of said Burlingame, and that because of the unfitness of Burlingame's streets as alleged, plaintiff contracted tubercular meningitis.

The fifth count is directed against Doctor Merrill individually and as Director of Public Health, State Department of Public Health, and Doctor Kupka individually and as Chief

of the Bureau of Tuberculosis, State Department of Public Health. It incorporates the salient allegations of the first count and then charges that for more than six years defendants had full knowledge and information of Czapkay's infectious and contagious tubercular condition and that in the year 1952 were notified of the order of isolation and quarantine; that Czapkay refused hospitalization and medical treatment and was isolated to his home; that defendants were aware that no placard was attached to Czapkay's premises or notice of his disease given the public; that said defendants knowing said dangerous and hazardous condition and serious health menace failed to enforce the provisions of the Health and Safety Code and to give notice to the general public, or take any steps to alleviate the condition and to protect the public health, as a result of which plaintiff contracted tubercular meningitis.

Demurrers of defendants Chope, Bodie, Merrill and Kupka were sustained with leave to amend. Those of the other defendants were sustained without leave to amend.

(a) *Doctors Chope and Bodie.*

The first cause of action (the one against Czapkay alone) alleges that plaintiff's contact with him occurred between February and December 16, 1957, and that as a result thereof plaintiff on or about December 9, 1957, became ill and was hospitalized with tubercular meningitis on December 16, 1957. In the other counts plaintiff does not allege the date when plaintiff became infected. The only time alleged is that in 1952 the defendants knew of Czapkay's condition and the order of quarantine was made that year.

On February 14, 1958, plaintiff filed his claim against Doctors Chope and Bodie and the San Mateo County Board of Supervisors in conformity with section 1981, Government Code. This section requires that any claim for injury ''as a result of the negligence or carelessness of any public officer or employee occurring during the course of his service or employment or as a result of the dangerous or defective condition of any public property, alleged to be due to the negligence or carelessness of any officer or employee'' must be filed within 90 days ''after the accident has occurred . . .'' Section 2561, Health and Safety Code, which provided that when a house or building has been quarantined because of a communicable disease the health officer ''shall'' place on it the placard described in the section, was repealed effective September 11, 1957 (Stats. 1957, ch. 205, p. 848, § 1). As plaintiff did not become infected (the ''accident'' did not take place) until

December 9, as alleged in the first count, or at the earliest 90 days prior to the filing of his claim, which would be November 16, 1957, no liability could attach to defendants in their official capacity for failure to comply with section 2561, Health and Safety Code, as that section then was no longer in existence. Hence, no cause of action is or can be stated against said defendants in their official capacity.

As said in *Bettencourt* v. *State* (1956), 139 Cal. App.2d 255, 257-258 [293 P.2d 472]: "Generally speaking a plaintiff can bring two types of actions for tort against public officers or employees: (1) He can sue them in their private and individual capacity. This is the normal common law tort action against an individual. . . . This type of action requires as additional to the pleading of negligence, compliance only with section 1981 (the filing of a claim). (2) He can sue them in their official capacity as municipal officers or employees. This type of action requires not only the filing of a claim under section 1981 but the requirements of section 1953 must also be alleged and proved." Section 1953 waives sovereign immunity for county officers only for damages resulting from the defective or dangerous condition of any public property. Even if the claim against defendants in their official capacity had been filed in time, "defective or dangerous condition of any public property" refers to *condition of property* and not to the condition of persons using the property, and therefore defendants in their official capacity are immune to the charges here made. This matter of immunity will be discussed further in connection with the demurrers of the other defendants.

As to their individual capacity: The complaint alleges that they failed and neglected to conduct proper or adequate investigation to insure strict compliance by Czapkay of the quarantine order issued by the Health and Welfare Department of San Mateo County. The test for determining whether liability attaches individually to the acts of public officers depends upon whether they were either acting without the scope of their authority or were acting within the scope of their authority in a ministerial capacity only. In either event liability would attach. The complaint alleges that the doctors were acting within the scope of their employment; hence the question here is, were they acting in a ministerial capacity only, and therefore might be liable, or were they exercising their discretion?

As said in 41 California Jurisprudence 2d, pages 33-34: "It

is elementary that a public officer is liable in damages to one specially injured by his neglect or refusal to perform, or by his negligent performance, of an official ministerial duty, to the extent of the special injury, regardless of intentions, whether good or bad. . . . Although an action will not generally lie against an officer if his powers are discretionary, if discretion is exercised and a course of conduct begun a failure to exercise ordinary care will give rise to liability.''

Section 3285, Health and Safety Code, provides: ''Each health officer is hereby directed to use every available means to ascertain the existence of, and immediately to investigate, all reported or suspected cases of tuberculosis in the infectious stages within his jurisdiction and to ascertain the sources of such infections. In carrying out such investigations, each health officer is hereby invested with full powers of inspection, examination and quarantine or isolation of all persons known to be infected with tuberculosis in an infectious stage and is hereby directed:

''(a) To make such examinations as are deemed necessary'' of such persons ''and to isolate or isolate and quarantine such persons, whenever deemed necessary for the protection of the public health. . . .

''(c) Whenever the health officer shall determine that quarantine or isolation in a particular case is necessary for the preservation and protection of the public health, he shall make an isolation or quarantine order in writing . . .

''(d) . . . such order shall be served upon the person named in such order.

''(e) Upon the receipt of information that any quarantine . . . order . . . has been violated, the health officer shall advise the district attorney . . . in writing . . . of such violation . . .''

Section 3285 contains mandatory and discretionary provisions. Thus, each health officer is *directed* to use every available means to ascertain the existence of, and to investigate suspected or reported cases of tuberculosis. This is mandatory. Some discretion is given as to the type of examination to be given (''To make such examinations *as are deemed necessary*'' of the suspected persons (emphasis added)); also as to whether such persons shall be isolated or quarantined or both (''and to isolate or isolate and quarantine such persons, whenever deemed necessary for the protection of the public health''). When the health officer determines that quarantine or isolation is necessary, he *shall* make the order

(see subdivision (c)). "Upon the receipt of information that any quarantine . . . order . . . has been violated," he "shall advise the district attorney . . . and shall submit to such district attorney the information in his possession relating to the subject matter . . ." (subdivision (e)). It is not alleged in the complaint that the defendants had received any information that the quarantine order had been violated. The basis of the charge is that said defendants after the order of quarantine was issued "failed and neglected to enforce the provisions of the health and safety statutes . . . and to place or cause to be placed, any placard whatsoever" on Czapkay's home "as provided by Section 2561" and to give notice to the citizens or plaintiff "of the existence of said infectious and communicable disease" and "to conduct *proper or adequate* investigation to insure strict compliance" by Czapkay with said order. (Emphasis added.) The charge that he "failed and neglected to enforce the provisions of the health and safety statutes" is a conclusion. Thus the only factual negligence charged against said defendants is that they failed to post the placard and to conduct proper or adequate investigations to determine if the quarantine was obeyed. Section 2561, Health and Safety Code, provided that when a house is quarantined "the health officer *shall*" post upon it the warning placard. (Emphasis added.) As we have heretofore pointed out, section 2561 was repealed before plaintiff claims to have been infected so that the failure to post would occasion no liability upon the part of said defendants.

It is impossible to determine from the complaint what is meant by failure "to conduct proper or adequate investigation." When a health officer determines that quarantine is necessary, the terms of the quarantine are discretionary with him. Section 3285, subdivision (c), provides that the quarantine order, among other terms, shall provide "the period of time during which the order shall remain effective . . . and such other terms and conditions as may be necessary to protect the public health." It nowhere appears what the period of time or the terms of the quarantine order were. It was issued in 1952. Plaintiff claims to have been infected in 1957. There is no allegation that the order was still in effect, or that the health officer did not within his discretion conduct investigations or take steps to ensure that the quarantine order was being obeyed. The charge is that he did not take "proper or adequate" steps. This is entirely a conclusion of law. Moreover, if he acted within his dis-

cretion, the fact that the steps turned out to be inadequate or improper would not make him liable. The officer has performed his duty when he exercises his discretion.

As said in *Routh* v. *Quinn*, 20 Cal.2d 488, 491 [127 P.2d 1, 149 A.L.R. 215]: ". . . an indispensable factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member." No such duty is shown here. In *Stang* v. *City of Mill Valley*, 38 Cal.2d 486 [240 P.2d 980], it was held that there was no liability imposed on a city, the city manager or fire chief, for failure to provide sufficient water for effective fire control. ". . . failure of a governmental function . . . involves the denial of a benefit owing to the community as a whole, but it does not constitute a wrong or injury to a member thereof so as to give rise to a right of individual redress (Rest., Torts, § 288), which right must be predicated upon the violation of a duty of care owed to the injured party."

In *Tomlinson* v. *Pierce*, 178 Cal.App.2d 112 [2 Cal.Rptr. 700], the complaint charged that the defendants, one a police officer, the other the chief of police, negligently failed to arrest an automobile driver whom they knew to be intoxicated and permitted him to remain at large, driving his car, as a result of which the driver collided with a car in which the plaintiffs' father was riding, causing the latter's death. In upholding the action of the trial court in sustaining a demurrer to this complaint without leave to amend, on the ground that no duty was shown to be owed the plaintiffs' father by the officers, the reviewing court said (pp. 115, 116): "As we construe the pleadings, plaintiffs' cause of action is founded upon the premise that when a police officer has knowledge that a member of society has formed the intention of committing a crime (i.e., knew that such person intended to drive and operate an automobile upon the public highways in an intoxicated condition at some future time), then for failure to make an arrest and detain such person, the officer becomes liable to all individuals for personal injury and property damage caused by this subsequent criminal act, and the failure to so arrest and detain him may be negligence on the part of the police officer. We find no support for this general proposition of law, either at common law, by statute, or under the California decisions. It was held in *Annala* v. *McLeod*, 122 Mont. 498 [206 P.2d 811], in an action against the sheriff for damages sustained by an individual through

riot or mob action, no liability existed for his failure or neglect to carry out his duties; that under common law the sheriff 'is the conservator of the public peace and is not liable for an injury to person or property of an individual occasioned from riotous assembly or mob, unless made so by Constitution or statute.' "

There is a strong similarity between the complaint in the Tomlinson case and that in our case. Both complaints charged that public officers failed to perform their duty in allowing a person whom they knew to be dangerous to the public to remain at large upon the streets, as a result of which the plaintiffs were injured. The Tomlinson case points out additionally that the sole proximate cause of the death of the plaintiffs' father was the manner in which the driver drove his car, and that if there was any breach of duty to the plaintiffs' father by the police officers, such breach was a remote, and not a proximate, cause of death. Likewise, in our case, exposure to Czapkay was the sole proximate cause of plaintiff's acquiring the disease, and any breach of duty by defendant officers was only a remote cause. (See also *Rubinow* v. *County of San Bernardino,* 169 Cal.App.2d 67 [336 P.2d 968].)

The sections of the Health and Safety Code (other than those hereinbefore mentioned) dealing with the duties of the health officer clearly show that his duties after issuing the quarantine order are discretionary rather than mandatory. Thus section 3110 provides that each health officer knowing or having reason to believe that any contagious, infectious or communicable disease exists in his jurisdiction "shall take such measures as may be necessary to prevent the spread of the disease or occurrence of additional cases." Section 3115 provides that upon receiving information of the existence of contagious, infectious or communicable disease each health officer shall "(a) Insure the adequate isolation of each case, and appropriate quarantine of the contacts and premises." Section 452 provides that the county health officer shall enforce and observe statutes relating to public health and orders, regulations and rules prescribed by the State Department of Public Health. Title 17, section 2624, California Administrative Code, provides that persons having communicable tuberculosis, who fail to observe the instructions of the local health officer, "shall be placed in strict isolation at home until such time as the local health officer feels that such isolation is no longer necessary. . . ."

■ We have been discussing so far the liability of health officers. Doctor Chope, the Director of the Health and Welfare Department of San Mateo County, is the health officer of that county. As to Doctor Bodie, alleged to be in charge of the Communicable Disease Division of the Health and Welfare Department, Health and Safety Code, section 451, provides for an appointment of a county health officer, but we fail to find where Doctor Bodie's office is referred to in the statutes nor do we find any duties imposed upon him. As it nowhere appears that Doctor Bodie had any mandatory duties which he is alleged to have violated, there can be no liability on his part for failure to adequately and properly follow up the quarantine.

(b) *County of San Mateo and City of Burlingame.*

■ The theory upon which plaintiff attempts to hold these defendants is that plaintiff's injury resulted from ''the dangerous or defective condition'' of their property and hence the sovereign immunity which otherwise cloaks a county and city for injuries resulting from their acting in a governmental capacity is waived by section 53051, Government Code. While ''public property'' as used in that section includes streets and highways (§ 53050) it is a novel conception that failing ''to conduct proper or adequate investigation to insure strict compliance'' by Czapkay with the quarantine order or to notify their citizens that Czapkay had communicable tuberculosis or even knowingly allowing him to roam the streets (although there is no charge that they did the latter) constitutes a dangerous and defective condition of the streets. If this is so, then any negligence of the police in allowing a dangerous criminal on the streets, or in failing to arrest a person operating a motor vehicle in a dangerous manner would constitute a dangerous and defective condition of property. The section has always been considered to mean just what it says, that it is the *condition* of *property* that determines the waiver of the immunity and not the condition of persons on that property. The public streets complained of were not dangerous or defective either structurally or by way of their general use and operation. Neither the county nor the city is an insurer of the public ways within their respective jurisdictions against moving objects not controlled by them or wrongful acts of third parties.

*Campbell* v. *City of Santa Monica* (1942), 51 Cal.App.2d 626, 629 [125 P.2d 561], held, referring to a statute similar to the present section 53051, ''But neither this statute nor

any other imposes a duty upon the city to control their use so as to avoid accidents upon them. By making and enforcing ordinances regulating the use of streets and sidewalks the city exercises a governmental power, and so for any breach thereof there is no liability.'' In *Shipley* v. *City of Arroyo Grande* (1949), 92 Cal.App.2d 748, 750 [208 P.2d 51], the court said: ''A city is not liable for injuries caused by motor vehicles merely because it may appear that its streets and curbs which are in no sense dangerous for careful use could possibly be made secure against peril by a more elaborate construction or by installing one of a simpler type [citation].''

Somewhat analogous was the situation in *Durst* v. *County of Colusa* (1958), 166 Cal.App.2d 623 [333 P.2d 787]. There the plaintiff was a patient at the county hospital. It was alleged that the defendant county ''so negligently and carelessly administered and performed the blood transfusions that the plaintiff was caused to and did receive blood transfusions of a type other than plaintiff's'' to his personal injury. The plaintiff contended that the doctrine of sovereign immunity could not apply because the county employed an incompetent and unlicensed technician to perform the laboratory tests ''and thereby created a dangerous and defective condition of public property for which it is liable under section 53051 of the Government Code.'' (P. 625.) The court held that there was no merit to this contention, as clearly the action was based upon the negligence of one of the county's employees and no dangerous or defective condition of county property was involved. The same is true of plaintiff's contention here that there is involved a dangerous and defective condition of San Mateo County's property and that of the city of Burlingame. See also *Grove* v. *County of San Joaquin* (1958), 156 Cal.App.2d 808 [320 P.2d 161], where the plaintiff, beaten by other prisoners while he was confined in the county jail, contended that the county's failure to properly supervise the prisoners to prevent such an occurrence brought the jail within the terms, dangerous and defective condition of county property in section 53051. Also see *Bryant* v. *County of Monterey* (1954), 125 Cal.App.2d 470, 473 [270 P.2d 897], where a similar contention was made where the plaintiff was injured by a ''kangaroo court'' existing in the jail. Both cases held that there was no merit to the contentions.

Plaintiff contends that whether a particular case meets the requirements of the code section, is a fact determination for

the jury (see *Arellano* v. *City of Burbank,* 13 Cal.2d 248, 254 [89 P.2d 113]), and that therefore it was for the jury to determine whether or not a dangerous or defective condition of public property existed here. However, the question as to the extent of the duties which are imposed by the act is one of law to be determined by the court and not by the jury. "The scope of the Public Liability Act is a question of law to be determined by the court." (*Bryant* v. *County of Monterey, supra,* 125 Cal.App.2d 470, 473; *Campbell* v. *City of Santa Monica, supra,* 51 Cal.App.2d 626, 629.)

Plaintiff contends that the county of San Mateo was acting in a proprietary capacity in that it contracted with the city of Burlingame for the services of the county's health and welfare department. This contract did not change the legal situation. Both the county and the city were acting in a governmental capacity, in supplying health services to the citizens of Burlingame. The county was acting as the agent of the city and not in a proprietary capacity.

No cause of action was stated against either San Mateo County or the city of Burlingame.

(c) *Doctors Merrill and Kupka, Officially and Individually.*

The discussion and holding concerning failure to post the placard hereinbefore applied to the demurrers of defendants Chope and Bodie applies to defendants Merrill and Kupka. Plaintiff contends that these defendants are liable because of section 106, Health and Safety Code. This provides that the Director of the State Department of Health and Safety is the executive officer of the department. "He shall administer the laws and regulations of the board pertaining to public health and shall vigilantly observe sanitary and public health conditions throughout the State and shall take all necessary precautions to protect it in its sanitary and public health relations with other States and countries. He shall perform such other duties as may be prescribed by law . . ."

Section 3051 provides that the state department *may* quarantine, isolate, inspect and disinfect persons, houses, etc. Section 3053 provides: "Upon being informed by a health officer of any contagious, infectious, or communicable disease the state department *may* take such measures as are necessary to ascertain the nature of the disease and *prevent* its spread." (Emphasis added.) The use of the word "may" in these sections makes such powers discretionary. Executive public officers are absolutely immune from civil liability in the performance of duties requiring the exercise of discretion or

judgment. (*White* v. *Brankman* (1937), 23 Cal.App.2d 307, .317 [73 P.2d 254].)

. As to the statutes dealing with "health officers" hereinbefore discussed, those statutes do not apply to officers of the State Department of Public Health. Section 3000, Health and Safety Code, provides: " 'Health Officer,' as used in this Division, includes county, city and district health officers, and city and district health boards, but does not include advisory health boards." The discussion concerning the nonliability of Doctors Chope and Bodie applies to Doctors Merrill and Kupka. Plaintiff has failed to point out where these defendants have violated any duty to him. Hence no cause of action is stated against them.

The demurrers were properly sustained. The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.