Filed 11/15/21  Mason v. Kernan CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES MASON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>S. KERNAN et al.,<br><br>    Defendants and Respondents. | H048312<br>(Monterey County<br>Super. Ct. No. 19CV001500) |

## I.  INTRODUCTION

Plaintiff James Mason allegedly contracted coccidioidomycosis (commonly known as valley fever) while incarcerated at a prison in Soledad.  Plaintiff, a self-represented litigant, filed a civil action alleging negligence and dangerous condition of public property against (1) defendant S. Kernan, the former Secretary of the Department of Corrections and Rehabilitation (CDCR); (2) defendant S. Hatton, the former warden at the prison in Soledad; and (3) S. Posson,[1] the chief medical officer at the prison.  Defendants filed multiple demurrers contending, among other arguments, that they were statutorily immune from liability based on Government Code section 855.4,[2] which provides immunity to a public employee for "an injury resulting from the decision to perform or not to perform any act to

---

[1]  Defendant Posson states that he was erroneously sued as "D.F. Posson."

[2] All further statutory references are to the Government Code unless otherwise indicated.

promote the public health of the community by preventing disease or controlling the communication of disease within the community." (*Id.*, subd. (a).) The trial court sustained defendants' demurrer to the first amended complaint without leave to amend, and a judgment was entered in favor of defendants. On appeal, plaintiff contends that the trial court erred in sustaining the demurrer without leave to amend.

For reasons that we will explain, we will affirm the judgment.

## II. FACTUAL BACKGROUND

Our summary of the facts is drawn from the allegations of the first amended complaint and attached exhibits, since we must assume the truth of properly pleaded factual allegations in reviewing an order sustaining a demurrer. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 (*Committee for Green Foothills*); *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 (*Lungren*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

Coccidioidomycosis (cocci or valley fever) is an infection caused by fungus. The fungus lives in the soil in certain regions of California. "When the soil is disturbed, for instance with construction, digging in the dirt, or during a dust storm, the fungal spores get into the air." "Most people who breath in the spores and get sick with cocci will get better on their own, without treatment, within weeks to months." For others, "the cocci fungus infects the lungs and causes illness. Some of these people will need antifungal medication to help them get better. On rare occasions, cocci can also spread to other parts of the body and cause a more severe form of the illness." Avoidance of breathing in dust and wearing an N95 mask are recommended when working in the dirt. Certain groups of people, including those with a weakened immune system, are at a higher risk of cocci spreading to body organs other than the lungs.

Between June and August 2016, a construction project took place "between two chapels" at a prison in Soledad where plaintiff was incarcerated. A structure and other small items were cleared from the site. Thereafter, the construction crew used tractors and other

2

equipment to dig up the soil and stockpile it nearby. "Tremendous amounts of dust and debris clouded the air over the site and started to come freely through six open windows and into the main corridor where plaintiff and other inmates" walked "to work, school, medical, etc." No ventilation system was fitted to the windows to prevent or control the dust from coming into the hallway. Plaintiff and others had to "cover their mouths and noses to avoid having to breath in the dust" while correctional officers used N95 masks to protect themselves.

Plaintiff did not know about "the dangerous nature of the dust coming through the windows." No warnings were posted in the housing units or on the corridor walls about the potential health hazards the dust might have on inmates with weakened immune systems.

Plaintiff began feeling sick and "put in a sick call slip." A chest x-ray was conducted on plaintiff in October 2016. The x-ray "showed something" in one of his lungs. He was prescribed medication pending further tests, and in November 2016, he was told that he had "[v]alley [f]ever." Plaintiff had constant pain, must take medication for the rest of his life, and the medication affected his liver. Plaintiff alleged that his injury was caused by the "dangerous nature of the soil" at the prison.

Defendant Kernan, as the former Secretary of the CDCR, was responsible for the care and custody of prisoners and had the sole authority to authorize construction at the prison. Defendant Hatton, as the former warden at the Soledad prison, was responsible for the custody and treatment of the inmates and had the authority to order inspections, monitoring, and corrections regarding conditions at the prison. Defendant Posson, as the chief medical officer at the prison, was responsible for the protection of the health of inmates and for their overall medical care.

Plaintiff alleged that by 2004, the Secretary of the CDCR and all wardens and health care managers "were put on notice about the dangerous nature of [v]alley [f]ever, especially" with respect to new construction projects. The Department of Public Health (CDPH) issued a report with specific recommendations on how to reduce and control

3

coccidioidomycosis in California prisons.  The Secretary of the CDCR and the warden and chief medical officer at the Soledad prison were aware of the CDPH study and the specific recommendation about mitigation measures, such as ventilation systems and watering down the soil, that should be put in place in a California prison during new construction.  The CDCR also distributed a manual that discussed coccidioidomycosis and its effects on various groups, including African Americans and people with weakened immune systems such as plaintiff.  All CDCR medical personnel were aware of the manual.  In April 2012, the CDCR issued a report regarding coccidioidomycosis in adult prisons, and defendants had constructive notice about the dangers of valley fever on specific groups of people and the connection to new construction projects.

Defendants Kernan, Hatton, and Posson allegedly knew about coccidioidomycosis in the soil around Soledad and Monterey County, and knew or should have known about inmate deaths from exposure to coccidioidomycosis spores in the air, especially during digging and grading projects.  Defendants allegedly were negligent in their duty to protect plaintiff and/or to use reasonable care.  Among other conduct, plaintiff alleged that defendant Kernan, the former CDCR Secretary, should have looked at reports regarding the soil and warned the warden to "take every available means to protect the inmate[s] . . . , including wetting down the soil and installing a ventilation system"; that defendant Hatton, the former warden at the prison, should have undertaken such protective measures; and that defendant Posson, the chief medical officer, should have examined reports about the soil and warned the warden or advised that warnings be posted around the facility to protect those with weakened immune systems who might be affected if dust from the construction site was not controlled or reduced.

### III.  PROCEDURAL BACKGROUND

#### A.  *Complaint and Demurrer*

On April 11, 2019, plaintiff filed a civil complaint alleging negligence and dangerous condition of property against defendants Kernan, Hatton, and Posson.  Defendants demurred

to the complaint on the grounds that (1) plaintiff failed to allege facts sufficient to constitute a cause of action, and (2) defendants were entitled to statutory immunity under sections 820.2 (general discretionary act immunity), 820.8 (immunity for acts or omissions of others), 830.6 (design immunity), 831.2 (immunity for natural condition of unimproved public property), 845.2 (immunity for failure to provide a prison or to properly equip one), and 855.4 (immunity for public health decisions).

The trial court sustained the demurrer by each defendant with leave to amend. In a written order, the court ruled that plaintiff failed to allege sufficient facts to state a claim for negligence or dangerous condition of public property against defendants Kernan and Posson. As to defendant Hatton, the court ruled as follows: "Plaintiff's complaint does allege facts sufficient to state a claim against Defendant Hatton, but Plaintiff's claim nonetheless fails as a matter of law because Defendant Hatton is entitled to immunity under Government Code 855.4," which precludes liability for public health decisions.

**B.** *First Amended Complaint and Demurrer*

On November 7, 2019, plaintiff filed a first amended complaint against defendants Kernan, Hatton, and Posson for negligence and dangerous condition of property. Defendants demurred to the first amended complaint on the grounds that they were entitled to statutory immunity under sections 820.2, 820.8, 830.6, 831.2, 845.2, and 855.4. Regarding immunity under section 855.4 for public health decisions, defendants contended that they were "immune from liability for any claim that they failed in their decision-making related to preventing [plaintiff] from contracting [valley fever]." Defendants requested that plaintiff be denied leave to amend, because his amended pleading failed to cure the deficiencies in the pleading.

**C.** *Opposition to Demurrer and Motion for Supplemental Complaint*

Plaintiff opposed the demurrer, contending that defendants were liable for dangerous conditions under section 840.2. In a separately filed "Motion for Supplemental Complaint in Support of Plaintiff's First Amended Complaint" (some capitalization omitted), plaintiff

5

argued that defendants were responsible for plaintiff's care, treatment, and/or custody, and that they had a duty to "warn each other about the preexisting condition of the soil, and to give notice to the inmate population about the possible health risks likely to occur due to the new construction project." Plaintiff contended that if "proper warnings" were given, then "mitigative measures would have surely been in place to protect [him] from contracting valley fever."

**D.** *Reply in Support of Demurrer*

In reply, defendants contended that section 855.4 barred plaintiff's lawsuit regarding any decision by defendants pertaining to preventing or controlling communication of disease regardless of whether he could satisfy the elements of a claim for a dangerous condition to public property. Defendants also argued that defendants' public health decisions relating to the construction project were discretionary policy decisions, not ministerial tasks, in view of the allegations in the first amended complaint. Defendants further contended that other statutory immunities also barred plaintiff's lawsuit.

**E.** *Trial Court's Order Regarding Demurrer*

After a hearing, the trial court sustained defendants' demurrer without leave to amend and denied plaintiff's "Motion for Supplemental Complaint in Support of Plaintiff's First Amended Complaint." In a written order, the court determined that defendants were entitled to immunity under section 855.4 regarding public health decisions. The court found, based on plaintiff's allegations in the first amended complaint, that "[d]efendants were exercising discretion in their decision to perform or not to perform acts to prevent or control the communication of disease. Defendants' policy decisions to authorize new construction, allow new construction, order reports, hire monitors, and consult reports are all high-level discretionary decisions." The court stated that plaintiff had failed to cure this defect in the pleading despite being allowed to amend. The court also determined that plaintiff failed to show in his motion to supplement the complaint that he could "cure the

6

immunity defect." The court denied the motion to supplement the complaint and sustained without leave to amend the demurrer to the first amended complaint.

Plaintiff filed an "Application for Order of Reconsideration; Proposed Motion for Second Amended Complaint." Among other arguments, plaintiff contended that defendants had a ministerial duty, that they were negligent in failing to warn plaintiff of the "preexisting danger in the soil around Soledad prison," and that defendants did not have statutory immunity.

Defendants filed opposition to plaintiff's motion for reconsideration. Defendants contended that plaintiff's motion "simply rehashes the arguments" that he made previously, and that he failed to meet the procedural requirements of Code of Civil Procedure section 1008.

After a hearing, the trial court denied plaintiff's motion for reconsideration. That same day, on May 29, 2020, the trial court entered judgment in favor of defendants.

Plaintiff filed a notice of appeal from the judgment.

## IV. DISCUSSION

We understand plaintiff to contend that his first amended complaint and proposed supplemental complaint stated, or could properly state, a "cause of action on the theory of negligence and dangerous condition of public property under Gov. Code sections 840.2, 840.4, and 830," and that the various statutory immunities raised by defendants did not bar his claim. We also understand plaintiff to argue that the trial court abused its discretion in denying him leave to amend, and that his pleading could be amended further to properly state a cause of action.

Defendants contend that the trial court properly sustained their demurrers without leave to amend. They argue that sections 855.4 and 831.2 provide them immunity from plaintiff's claims arising out his contraction of valley fever.

We first set forth the standard of review before analyzing the issue of defendants' statutory immunity under section 855.4, which we find dispositive.

7

**A.** *Standard of Review*

On appeal, "the plaintiff bears the burden of demonstrating that the trial court erred" in sustaining the demurrer. (*Cantu v. Resolution Trust Corp*. (1992) 4 Cal.App.4th 857, 879.) In reviewing "an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.' " (*Committee for Green Foothills*, *supra*, 48 Cal.4th at p. 42.) We assume the truth of all facts properly pleaded by the plaintiff. (*Lungren*, *supra*, 14 Cal.4th at p. 300.) "We also accept as true all facts that may be implied or inferred from those expressly alleged. [Citations.]" (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 633, fn. 3.) We " 'give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context. [Citations.] We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law.' [Citation.]" (*Lungren*, *supra*, at pp. 300-301.) Where a demurrer is based upon an affirmative defense, such as statutory immunity, the demurrer "will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense. [Citation.]" (*Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.)

If the trial court did not grant leave to amend, we review that ruling for abuse of discretion. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Ibid*.)

**B.** *General Principles Regarding a Public Employee's Tort Liability and Immunity*

The Government Claims Act (§ 810 et seq. (hereafter sometimes the Act)) "governs all public entities and their employees [citations] and all noncontractual bases of compensable damage or injury that might be actionable between private persons [citations]." (*Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 (*Caldwell*); see § 810, subd. (b).) The purpose of the Act "is to afford categories of immunity where, but for its provisions, public agencies or employees would otherwise be liable under general principles of law." (*Caldwell*, *supra*, at p. 985.) In this regard, the Act "specifically grant[s] public employees

8

immunity in a number of specific instances where they might otherwise be liable." (*Caldwell*, *supra*, at p. 985.)

The Act "establishes the basic rule[] . . . that public employees are liable for their torts except as otherwise provided by statute . . . ." (*Caldwell*, *supra*, 10 Cal.4th at p. 980, italics omitted; § 820, subd. (a).) In addition to tort liability, public employees by statute may be "liable for injury caused by a dangerous condition of public property" if certain elements are met. (§ 840.2.) Similar to tort liability, however, a public employee's liability for a dangerous condition of public property "is subject to any immunity . . . provided by statute." (§ 840.)

## C. *Immunity for Public Health Decisions*

One statutory exception to public employee liability is found in section 855.4. Relevant here, subdivision (a) of section 855.4 states: "Neither a public entity nor a public employee is liable for an injury resulting from the decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision whether the act was or was not to be performed was the result of the exercise of discretion vested in the public entity or the public employee, whether or not such discretion be abused."

In *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683 (*Wright*), the appellate court considered the application of section 855.4 to a claim for dangerous condition of public property against a city. (See *Wright*, *supra*, at pp. 688, 690.) In *Wright*, the plaintiffs lived near an old, abandoned hospital building that was not open to the public. (*Id.* at pp. 685, 690.) The plaintiffs' daughter "would often explore in and around the old hospital building and she would remove some old records from that building." (*Id.* at p. 686.) Soon after one excursion, she "contracted hantavirus pulmonary syndrome and died." (*Ibid.*, fn. omitted.) "The hantavirus is spread via contact with infected deer mice feces and dried urine." (*Ibid.*, fn. 2.) The plaintiffs filed a civil complaint against the city, and the trial court sustained a demurrer without leave to amend. (*Id.* at pp. 686-687 & fn. 5.)

9

The appellate court concluded that the city's demurrer for failure to state sufficient facts to constitute a cause of action was properly sustained based on the immunity provided by section 855.4. (See *Wright*, *supra*, 93 Cal.App.4th at pp. 685, 686-687.) In reaching this conclusion, the appellate court rejected the plaintiffs' contention that section 855.4's immunity did not apply to a cause of action for dangerous condition of public property. (*Wright*, *supra*, at pp. 687-689.)

The appellate court also rejected the plaintiffs' contention that section 855.4 only "appl[ied] in situations where a public entity acts in response to an outbreak of a disease which affects the community as a whole such as small pox or tuberculosis, not situations where a public entity's substandard maintenance of public property is the sole cause in fact of an individual[']s exposure to and contraction of a deadly disease.'" (*Wright*, *supra*, 93 Cal.App.4th at p. 689.) The appellate court, quoting an argument by the city with approval, stated that " 'to hold that the immunity provided by . . . Section 855.4 is not applicable to public property would be to subject public health facilities and all other owners of any public property, improved or unimproved, to be sued for failure to adequately keep the facility or unimproved property germ, bacteria and virus-free. There is no showing that this was the intent of the [L]egislature in the statutory scheme of . . . Sections 835 [public entity liability for dangerous conditions of public property] and 855.4. [¶] The presence of germs, bacteria and viruses and the like, many of which are microscopic, and which may or may not be contained in saliva, animal droppings, or any multitude of other forms, upon the vast public property of this state, cannot . . . be viewed as liability events, without some specifically stated intent of the Legislature.' [¶] Furthermore, as noted in the Law Revision Commission comments to section 855.4, '[t]his section declares a specific rule of discretionary immunity for acts or omissions relating to quarantines *or other measures for the prevention or control of disease*.' [Citation.]" (*Id.* at pp. 689-690.) The appellate court concluded that the city "should not be held liable for its 'omissions relating to . . . the prevention or control of' the hantavirus." (*Id.* at p. 690.)

**D.** *Analysis*

We understand plaintiff to contend that his first amended complaint and proposed

supplemental complaint stated, or could properly state, a "cause of action on the theory of

negligence and dangerous condition of public property under Gov. Code sections 840.2,[3]

840.4,[4] and 830,[5]" and that the various statutory immunities raised by defendants did not

---

[3]  Section 840.2 states:  "An employee of a public entity is liable for injury caused by a dangerous condition of public property if the plaintiff establishes that the property of the public entity was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶]  (a) The dangerous condition was directly attributable wholly or in substantial part to a negligent or wrongful act of the employee and the employee had the authority and the funds and other means immediately available to take alternative action which would not have created the dangerous condition; or  [¶]  (b) The employee had the authority and it was his responsibility to take adequate measures to protect against the dangerous condition at the expense of the public entity and the funds and other means for doing so were immediately available to him, and he had actual or constructive notice of the dangerous condition under Section 840.4 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[4]  Section 840.4 states:  "(a) A public employee had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 840.2 if he had actual personal knowledge of the existence of the condition and knew or should have known of its dangerous character.  [¶]  (b) A public employee had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 840.2 only if the plaintiff establishes (1) that the public employee had the authority and it was his responsibility as a public employee to inspect the property of the public entity or to see that inspections were made to determine whether dangerous conditions existed in the public property, (2) that the funds and other means for making such inspections or for seeing that such inspections were made were immediately available to the public employee, and (3) that the dangerous condition had existed for such a period of time and was of such an obvious nature that the public employee, in the exercise of his authority and responsibility with due care, should have discovered the condition and its dangerous character."

[5]  Section 830 sets forth the following definitions:  "(a) 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.  [¶]  (b) 'Protect against' includes repairing, remedying or correcting a dangerous condition, providing safeguards

11

bar his claim. Regarding defendants' claim of immunity under section 855.4 in particular, plaintiff contends that this immunity "is only applicable to maintenance actions. It applies to hospital buildings and the like. The [*Wright*] case is an old abandoned hospital building. It also specifically applies to public health officials and physicians who have discretion to help the public health of the community by preventing the disease of a patient, or person, who has contracted a highly contagious, communicable disease by quarantining that patient, or person, in a hospital setting or home. Only a public health official or physician has discretion to control the spread of the contagious, communicable disease within the community, by quarantine." In support of this argument, plaintiff cites *Derrick v. Ontario Community Hospital* (1975) 47 Cal.App.3d 145 (*Derrick*) and *Jones v. Czapkay* (1960) 182 Cal.App.2d 192 (*Jones*).

We are not persuaded by plaintiff's argument. Section 855.4 is not expressly limited to certain types of buildings such as hospitals, is not expressly limited to the "maintenance" of buildings, and is not expressly limited to public health officials or physicians. Instead, section 855.4 broadly applies to "a public entity" or "a public employee" who makes a "decision to perform or not to perform any act to promote the public health of the community by preventing disease or controlling the communication of disease within the community if the decision . . . was the result of the exercise of discretion vested in the public entity or the public employee . . . ." (*Id.*, subd. (a).)

In this case, plaintiff alleged that his injury was caused by the "dangerous nature of the soil" which contained coccidioidomycosis. He further alleged that all three defendants knew about coccidioidomycosis in the soil, and that they knew or should have known about inmate deaths from exposure to coccidioidomycosis spores in the air. Plaintiff alleged that

against a dangerous condition, or warning of a dangerous condition. [¶] (c) 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity."

12

defendants were negligent in their duty to protect plaintiff and/or to use reasonable care. Among other conduct, plaintiff alleged that defendant Kernan, the former CDCR Secretary, should have looked at reports regarding the soil and warned the warden to "take every available means to protect the inmate[s] . . . , including wetting down the soil and installing a ventilation system"; that defendant Hatton, the former warden at the prison, should have undertaken such protective measures; and that defendant Posson, the chief medical officer, should have examined reports about the soil and warned the warden or should have advised that warnings be posted around the facility to protect those with weakened immune systems who might be affected if dust from the construction site was not controlled or reduced. Similarly, plaintiff on appeal argues that defendants "had the authority or other means to take appropriate action which would not have created a [d]angerous condition." Plaintiff's allegations and argument implicate section 855.4 in that each defendant "public employee" was allegedly "vested" with the authority to make a "decision to perform . . . [an] act to promote the public health of the community by preventing disease or controlling the communication of disease within the community," and specifically at the prison. (*Id.*, subd. (a).)

Moreover, as we have explained above, the appellate court in *Wright* applied the immunity of section 855.4 in the context of "old, abandoned, buildings that were not open to the public." (*Wright*, *supra*, 93 Cal.App.4th at p. 690.) The appellate court *rejected* the contention that section 855.4 only "appl[ied] in situations where a public entity acts in response to an outbreak of a disease which affects the community . . . ." (*Wright*, *supra*, at p. 689.) As the appellate court explained, to hold otherwise " 'would be to subject public health facilities *and all other owners of any public property*, improved or unimproved, *to be sued for failure to adequately keep the facility* or unimproved property *germ, bacteria and virus-free*. There is no showing that this was the intent of the [L]egislature in the statutory scheme . . . . [¶] *The presence of germs, bacteria and viruses and the like, many of which are microscopic, and which may or may not be contained in saliva, animal droppings, or*

13

*any multitude of other forms, upon the vast public property of this state, cannot . . . be viewed as liability events, without some specifically stated intent of the Legislature*.' [¶] Furthermore, as noted in the Law Revision Commission comments to section 855.4, '[t]his section declares a specific rule of discretionary immunity for acts or omissions relating to quarantines *or other measures for the prevention or control of disease*.' [Citation.]" (*Id.* at pp. 689-690, some italics added.) Thus, in this case, the defendant public employees may "not be held liable for [their] 'omissions relating to . . . the prevention or control of' [coccidioidomycosis]" (*id*. at p. 690).

The cases cited by plaintiff do not dictate otherwise. Neither *Derrick*, *supra*, 47 Cal.App.3d 145, nor *Jones*, *supra*, 182 Cal.App.2d 192, addressed the issue of immunity under section 855.4.

We also find no abuse of discretion in the trial court's denial of leave to amend. On appeal, plaintiff states that "a second amended complaint will add additional facts based on the legal theory that the soil at the construction site constituted a dangerous condition." He also states that "[a] second amended complaint will add additional facts to show not only how negligent the construction workers in preventing the dust from coming into the main corridor, but how there was no action made by Defendants to warn the prison population of the potential harm the construction projects would have [on] those with weakened immune systems like Plaintiff." Plaintiff contends that defendants' "knowledge about valley fever and its connection to new construction makes it reasonably foreseeable that inmates [w]ould be injured if preventive measures were not in place to reduc[e] and control the dust likely to get into the air." Plaintiff further contends that "[a] second amended complaint would allow [him] to provide additional facts to show that [t]he construction project constituted a dangerous condition and that [defendants'] negligence was directly attributable to the lack of reasonable care." Whether alleged as a tort claim for negligence based on a theory of a special relationship between plaintiff and defendants, or as a statutory claim for a dangerous condition of public property under sections 840.2, 840.4, and 830, plaintiff fails to

14

persuasively articulate how the proposed additional facts would avoid the immunity provided to defendants under section 855.4.

Having concluded that plaintiff's first amended complaint is barred by section 855.4, and that the trial court did not abuse its discretion in denying plaintiff leave to amend, we do not reach the parties' contentions regarding whether other statutory immunities also bar plaintiff's claims.

## V.  DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

DANNER, J.

***Mason v. Kernan***
**H048312**