[Civ. No. 13843. Fourth Dist., Div. Two. Apr. 11, 1975.]

JAMES C. DERRICK et al., Plaintiffs and Appellants, v.
ONTARIO COMMUNITY HOSPITAL et al., Defendants and Respondents.

146

**COUNSEL**

Brundage & Roseman and Steven Roseman for Plaintiffs and Appellants.

Thompson & Colgate and Leighton B. Tegland for Defendants and Respondents.

**OPINION**

**KAUFMAN, J.**—Defendant Ontario Community Hospital ("Hospital") demurred generally to plaintiffs' first amended complaint. The trial court sustained Hospital's demurrer without leave to amend and rendered judgment dismissing the action as to Hospital. Plaintiffs appeal from the judgment of dismissal.

Also named as defendants in the action and those as to whom the action is still pending are Dawn Marie Heneman ("Dawn"), a minor, her mother Carol Heneman, Dr. Simon Klitenic, Dawn's attending physician, and a number of fictitiously named defendants.

The issue on appeal is whether plaintiffs have or could by amendment state a cause of action against Hospital. For purposes of appeal we must accept the allegations of the first amended complaint as true. (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.*, 9 Cal.3d 731, 734 [108 Cal.Rptr. 845, 511 P.2d 1197]; *Alcorn* v. *Anbro Engineering, Inc.*, 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; 3 Witkin, Cal. Procedure (2d ed.) p. 2413.)

Before turning to the substance of the allegations of the first amended complaint, it is necessary to point out three peculiarities, all of

which cause the pleading to be ambiguous and uncertain. Although the first amended complaint names two plaintiffs, to wit, James C. Derrick and Scott Ernest Derrick, a minor, by and through his guardian ad litem, James C. Derrick, the substantive allegations of the complaint repeatedly refer to a singular plaintiff without identifying which of the two plaintiffs the allegations refer to. Secondly, some of the events are alleged to have occurred between April and June of 1972, whereas other allegations indicate the events occurred between May 28 and June 16, 1971. Thirdly, in respect to the alleged knowledge and negligent conduct of the defendants, reference is frequently made to "defendants herein" or to "defendants, and each of them," without differentiation between Dawn and her mother on the one hand and Hospital and Dr. Klitenic on the other hand. We are confident, however, that these uncertainties and ambiguities could be eliminated by further amendment of the complaint, and the trial court sustained Hospital's demurrer without leave to further amend.

The first amended complaint consists of two overlapping counts both based upon negligence. It is alleged, inter alia, that Dawn was admitted as a patient to Hospital on or about May 28, 1971, following an automobile accident; that Dr. Klitenic was the admitting and treating physician;[1] that Dr. Klitenic undertook to diagnose, care for and treat Dawn; that Hospital agreed to and undertook to care for and treat Dawn and assist her physicians in carrying out her treatment; that Dawn was a patient in Hospital from May 28 to June 16, 1971; that, while a patient in Hospital, Dawn developed an infectious, highly contagious, communicable condition; that defendants and each of them either knew or should have known that Dawn's condition was highly contagious and communicable and knew or should have known that others, including plaintiff, would come into contact with Dawn and would suffer great harm as a result of contracting said contagious disease should Dawn be allowed to circulate in public and socialize with others including plaintiff.

Hospital is alleged to have been negligent in four respects. First, that ". . . defendants undertook action that exposed plaintiff and others to said poisonous, infectious and contagious disease and so exposed plaintiff and others to a highly dangerous condition, did not undertake safeguards, safety practices and precautions to prevent others, including plaintiff from contracting said poisonous, infectious and contagious condition . . . ." Second, ". . . that defendants, and each of them, failed to

---

[1] No relationship between Hospital and Dr. Klitenic is alleged.

comply with the requirements of California Health and Safety Code, Section 3125, thereby preventing action under California Health and Safety Code, Section 3110, and thereby prevented health authorities from alerting the mother of [Dawn] as well as your plaintiff, from knowing that defendant, [Dawn], had an infectious, contagious, poisonous, communicable disease . . . ." Third, that defendants, and each of them, negligently failed to inform Dawn and her mother that Dawn had contracted ". . . said poisonous, infectious, contagious, communicable condition . . . ." Fourth, that "[d]efendants, and each of them, negligently and carelessly failed, refused and neglected to notify plaintiff or the parents of plaintiff of said risk of harm and hazard inherent in the exposure to [Dawn] . . . ."

Next, it is alleged: "As a proximate result of said negligence of the defendants, and each of them, plaintiff was injured in body and mind in that he contracted said poisonous, infectious, contagious communicable disease from [Dawn], and as a result of such contact has had to undertake extensive surgery to his face, and he suffered and is suffering great mental and physical pain and has suffered and will suffer permanent damages in the sum of $1,000,000.00." It is further alleged that ". . . plaintiff has incurred and continues to incur medical and related expenses."

We note that nowhere is it alleged that plaintiffs were, or either of them was, a patient in Hospital or had any other relationship to defendant Hospital. On the contrary, it is stated in appellants' opening brief: "At the time your minor plaintiff contacted [sic] said condition from defendant DAWN MARIE HENEMAN, neither your minor plaintiff nor DAWN MARIE HENEMAN were hospitalized at defendant ONTARIO COMMUNITY HOSPITAL. Plaintiff minor was never a patient at defendant ONTARIO COMMUNITY HOSPITAL."

### CONTENTIONS, ISSUES AND DISPOSITION

In traditional terms, the question posed is whether or not on the allegations of the first amended complaint defendant Hospital owed any duty to plaintiffs the breach of which proximately resulted in injury to them. (See *Vesely* v. *Sager,* 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Richardson* v. *Ham,* 44 Cal.2d 772, 776 [285 P.2d 269]; *Richards* v. *Stanley,* 43 Cal.2d 60, 63 [271 P.2d 23]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 220 [157 P.2d 372, 158 A.L.R. 872] [concurring opn. of Traynor, J.].)

## Duty Derived from Statute

■  Plaintiffs contend that Hospital owed them a duty of care based on section 3125 of the Health and Safety Code. "A duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability. [Citations omitted.] In this state a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. [Citations omitted.]" (*Vesely* v. *Sager, supra,* 5 Cal.3d at p. 164; see also Evid. Code, § 669, subd. (a).)

Health and Safety Code, section 3125 reads: "All physicians, nurses, clergymen, attendants, owners, proprietors, managers, employees, and persons living [*sic*], or visiting any sick person, in any hotel, lodging house, house, building, office, structure, or other place where any person is ill of any infectious, contagious, or communicable disease, shall promptly report that fact to the health officer, together with the name of the person, if known, the place where he is confined, and the nature of the disease, if known." It is alleged that Hospital failed to report to the local health officer Dawn's contagious, communicable disease and that the health officer was thereby prevented from exercising his duty under Health and Safety Code, section 3110, which, at the time of the alleged negligence in the case at bench, read: "Each health officer knowing or having reason to believe that any case of the diseases made reportable by regulation of the Board of Public Health, or any other contagious, infectious, or communicable disease exists, or has recently existed, within the territory under his jurisdiction, shall take such measures as may be necessary to prevent the spread of the disease or occurrence of additional cases."[2]

Plaintiffs' theory in this regard raises a real problem of proximate cause because it assumes that the local health officer would have placed Dawn in quarantine or taken other measures to isolate her from contact with others such as plaintiff. It is by no means a certainty that the public health officer would have taken such action, for section 3110 imposes upon him only the obligation to "take such measures as may be necessary to prevent the spread of the disease or occurrence of additional

---

[2]Section 3110 was amended by the Legislature in 1971. (Stats. 1971, ch. 1593, p. 3276, § 172, operative July 1, 1973.) But the amendment made no substantive change in the section.

cases." Except for the duty to report the occurrence of certain diseases to the State Department of Public Health (see, e.g., Cal. Admin. Code, tit. 17, § 2501, et seq.) the local public health officer is vested with considerable discretion as to what actions he should take to control the spread of an infectious disease. (See *Jones* v. *Czapkay*, 182 Cal.App.2d 192, 202 [6 Cal.Rptr. 182]; Cal. Admin. Code, tit. 17, § 2512.) But this a problem of proof. For purposes of this appeal, we must assume the truth of the allegations contained in the first amended complaint, and plaintiffs alleged that their injuries proximately resulted from Hospital's failure to report Dawn's disease to the local health officer.

■ Hospital asserts that it is ridiculous to apply Health and Safety Code, section 3125 to hospitals, inasmuch as hospitals invariably treat communicable diseases. This assertion is untenable. In the first place the language of section 3125 is broad enough to include hospitals. In the second place, regulations promulgated by the State Department of Health (see Health & Saf. Code, §§ 3115, 3123) expressly require superintendents or managers of a hospital to report certain specified diseases. (Cal. Admin. Code, tit. 17, § 2500.)

■ It thus appears that Health and Safety Code, sections 3110 and 3125 were enacted to protect the public against the spread of contagious, communicable diseases and that section 3125 does impose upon Hospital a duty to plaintiffs to report known infectious, contagious or communicable diseases to the local health officer.

Having so concluded, the judgment dismissing Hospital as a defendant must be reversed. However, since they are likely to arise at trial, it appears necessary that we discuss several other contentions of the parties.

*Common Law Duty*

Plaintiffs contend that aside from the statutory duty already discussed, Hospital owed plaintiffs a duty to exercise reasonable care based on common law principles. Analysis of liability for negligence in terms of common law "duty" has been criticized as a question-begging process. "The assertion that liability must . . . be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—whether plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . ■ It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself . . . . But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those

considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' [Citation omitted.]" (*Dillon* v. *Legg,* 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

The principal policy considerations are: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian,* 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; see also *Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *McGarvey* v. *Pacific Gas & Elec. Co.,* 18 Cal.App.3d 555, 561 [95 Cal.Rptr. 894]; *Bland* v. *Reed,* 261 Cal.App.2d 445, 451 [67 Cal.Rptr. 859].)

■ We deal first with the allegation that Hospital ". . . undertook action that exposed plaintiff and others to said poisonous, infectious and contagious disease and so exposed plaintiff and others to a highly dangerous condition, did not undertake safeguards, safety practices and precautions to prevent others, including plaintiff from contracting said poisonous, infectious and contagious condition . . . ." This vague, conclusory allegation avails plaintiffs nothing. "The purpose of a complaint is to furnish the defendants with certain definite charges which can be intelligently met. Mere general assertions by way of conclusion or those indefinite in character, such as here presented, cannot be deemed sufficient compliance with the long-established rules · of pleading." (*Lavine* v. *Jessup,* 161 Cal.App.2d 59, 69 [326 P.2d 238].)

■ We turn next to the allegation that Hospital was negligent in failing to warn plaintiff or plaintiff's parents of Dawn's contagious, communicable disease. Based upon the policy considerations mentioned above including, particularly, "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care," we have concluded that Hospital owed no duty to plaintiffs to warn them of Dawn's contagious, communicable disease. The reason for our conclusion is simple. It would impose an intolerable burden upon Hospital to notify all members of the public that one of its patients being released from the hospital is suffering from a contagious, communicable disease. We can think of no way in which Hospital could discharge such a duty. We therefore decline to impose such a duty.

■ We turn next to the allegation that Hospital was negligent in failing to advise Dawn or her mother that Dawn had contracted a contagious, communicable disease. We have concluded that Hospital owed plaintiffs no such duty to advise Dawn or her mother. Dawn had an attending physician, Dr. Klitenic, who had undertaken to treat her. It was the duty of Dr. Klitenic to advise Dawn and her mother that Dawn had contracted a contagious, communicable disease. (See *Hofmann* v. *Blackmon* (Fla.App. 1970) 241 So.2d 752; *Wojcik* v. *Aluminum Company of America* (1959) 18 Misc.2d 740 [183 N.Y.S.2d 351, 357-358]; *Davis* v. *Rodman* (1921) 147 Ark. 385 [227 S.W. 612, 13 A.L.R. 1459]; *Skillings* v. *Allen* (1919) 143 Minn. 323 [173 N.W. 663, 5 A.L.R. 922]; cf. Cal. Admin. Code, tit. 17, § 2514.) We do not think it wise to impose upon Hospital the duty to advise a patient or a patient's parents concerning the patient's condition when that duty might substantially interfere with the relationship between the patient and her attending physician.[3]

## Conclusion

We thus conclude that Hospital owed plaintiffs no duty except under Health and Safety Code, section 3125. At trial, of course, it will be incumbent upon plaintiffs not only to prove that Hospital violated its duty under Health and Safety Code, section 3125, but that its violation of the statute was the proximate cause of plaintiffs' injuries.

The judgment is reversed.

Gardner, P. J., and McDaniel, J., concurred.

---

[3]We express no opinion on the question of a hospital's duty to inform the attending physician that his patient has contracted a contagious communicable disease where the hospital has knowledge of that fact and the physician does not. The first amended complaint alleges that both Hospital and Dr. Klitenic had knowledge of Dawn's condition.