[Civ. No. 17047. Fourth Dist., Div. Two. Jan. 6, 1977.]

C. L. SMITH COMPANY, INC., Plaintiff and Appellant, v.
ROGER DUCHARME, INC., et al., Defendants and Respondents.

736

COUNSEL

Elvin R. Meek and Alan E. Spears for Plaintiff and Appellant.

Herrmann & Potter and Robert E. Herrmann for Defendants and Respondents.

OPINION

McDANIEL, J.—

### INTRODUCTION

The action in the trial court was for breach of a masonry subcontract and also for what plaintiff titled "Negligence—Breach of Statutory Duty" with reference to section 4100 et seq. of the Government Code, the Subletting and Subcontracting Fair Practices Act. The suit was against a general contractor who had been awarded the prime contract on a school construction project after relying on a bid submitted by the plaintiff subcontractor in compilation of the total bid. However, in submitting the bid, the defendant inadvertently failed to list plaintiff as the masonry subcontractor. As a consequence of such failure, the school district, which had awarded the prime contract, refused, per section 4106 of the Government Code,[1] to allow the defendant to utilize the plaintiff on the project, and so the defendant did not sign the subcontract agreement tendered by the plaintiff.

The defendant demurred to the complaint, but the demurrer was never argued. Instead, defendant made a motion for summary judgment.[2] This motion was granted, and it is from the judgment entered

---

[1]Section 4106 of the Government Code reads: "If a prime contractor fails to specify a subcontractor or if a prime contractor specifies more than one subcontractor for the same portion of work to be performed under the contract in excess of one-half of 1 percent of the prime contractor's total bid, he agrees that he is fully qualified to perform that portion himself, and that he shall perform that portion himself.

"If after award of contract such prime contractor shall, except as provided for in Sections 4107 or 4109, subcontract any such portion of the work, such prime contractor shall be subject to the penalties named in Section 4111."

[2]Before the 1957 amendment to section 437c of the Code of Civil Procedure, it had been held that a motion for summary judgment was premature until an answer had been filed. (See, e.g., *Gale* v. *Wood,* 112 Cal.App.2d 650 [247 P.2d 67]; *Loveland* v. *City of Oakland,* 69 Cal.App.2d 399 [159 P.2d 70].) However, with the change in language from

thereon that plaintiff has appealed. We agree with the trial court that the declarations filed in support of the motion contained sufficient facts to support the judgment and that the declarations filed in opposition raised no triable issues of fact. The judgment is therefore affirmed.

## Synopsis of the Declarations

In support of its motion for summary judgment, the defendant filed the declarations of Roger Ducharme and William Brown. Ducharme's declaration is summarized as follows:

On January 31, 1974, defendant submitted a bid to San Diego School District to perform the work called for on a project known as Logan Elementary School Replacement. On February 5, 1974, the school district accepted the defendant's bid and awarded it the contract.

The bid proposal was submitted on a form which was furnished by the school district. Pertinent to the litigation here, one of the pages of the form was entitled "Division of Work" and provided spaces on which the bidder could list those subcontractors who would perform in excess of one-half of 1 percent of the total amount of the bid. In listing the subcontractors, the defendant "inadvertently" failed to include a listing for the masonry work.

After learning that the bid had been awarded to it, the defendant prepared and mailed out to the proposed subcontractors, including plaintiff, a standard form of subcontract agreement for the purpose of determining the terms and conditions of their respective offers and performances. At this same time, in compliance with the general conditions contained in the prime contract, the defendant prepared and submitted a list of proposed subcontractors to the architects on the project. This list included the plaintiff as the proposed masonry subcontractor.

Soon after the prime contract was awarded, there was an exchange of papers and correspondence between plaintiff and defendant for the purpose of adjusting various terms and conditions in the proposed subcontract agreement. Finally on March 4, 1974, defendant sent the subcontract back to plaintiff along with a letter stating that defendant

---

" 'when an answer is filed' " to " 'if it is claimed the action has no merit. . .' " it has been held that the filing of an answer is no longer a condition precedent to a motion for summary judgment. (*Snider* v. *Snider,* 200 Cal.App.2d 741, 747 [19 Cal.Rptr. 709].)

had no objections to the changes in the terms of performance proposed by plaintiff and that plaintiff should further reply without delay with its submittals and other terms for a written contract.

Then on March 6, 1974, defendant was informed by the architects that the list of proposed subcontractors which had been submitted for approval was returned and marked unapproved for the reason that the plaintiff had been scheduled as the proposed masonry subcontractor while not having been listed on the bid proposal as one who would do this work. Thereafter, a representative of the defendant made an effort to persuade the architects and the construction supervisor for the San Diego School District to permit the use of plaintiff as the masonry subcontractor on the project. The school district refused to agree to this change in the bid. As a consequence, the masonry portion of the project was not performed by plaintiff.

The motion for summary judgment was supported further by the declaration of William Brown, one of the attorneys for the defendant Roger Ducharme, Inc. This declaration does not set forth any prospective testimony concerning events occurring at the time the disputed transaction occurred but, rather, is directed at the declaration filed in opposition and subscribed by one of the attorneys for the plaintiff. In other words, the declaration is essentially argumentative and adds little in the way of disclosing prospective evidence which would be available to the defense should the case have gone to trial.

Turning to the declarations filed in opposition to the motion for summary judgment, there were two. One of the declarations was subscribed by the attorney for the plaintiff and, as in the case of Mr. Brown's declaration, is essentially argumentative in that it summarizes and discusses the significance of various documentary items which were exchanged in the course of the disputed transaction.

The other declaration filed in opposition was subscribed by C. L. Smith, the president of plaintiff. The factual items which are the subject of his declaration are essentially the same as those set out by Mr. Ducharme except that Mr. Smith declared that the plaintiff and the defendant "orally agreed upon all terms and conditions of performance as is more particularly set forth in the attached Subcontract Agreement . . . ." The subcontract agreement there referred to was signed by C. L. Smith but not by the defendant. The Smith declaration goes on to state

"[t]hat at all times plaintiff and defendants . . . considered plaintiff to be obligated to perform under the terms and conditions of said subcontract. . . ."

ISSUES, DISCUSSION AND DISPOSITION

■ In evaluating a motion for summary judgment, there are two basic tasks to be performed. The decision in *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412 [42 Cal.Rptr. 449, 398 P.2d 785], observes that the law on the subject is well settled, and states, "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial." (*Id.,* at p. 417.) This exposition of the decisional process in determining motions for summary judgment has been reiterated in the more recent cases of *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10], and *Cornelison* v. *Kornbluth,* 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981].

Turning to the declarations above summarized for the purpose of testing them against the guidelines prescribed by precedent, the first question to be answered is whether the declaration of Roger Ducharme points to evidence which, if adduced at trial, would support a judgment for the defendant. To answer this question requires an analysis of the pleadings, more precisely, the two theories of action upon which plaintiff sought to recover.

In the first cause of action, plaintiff pleaded a breach of contract. More explicitly plaintiff alleged that the parties entered into an "oral and written agreement which provided in legal effect that plaintiff would provide and furnish the masonry work of improvement on that certain project . . ." As to the alleged agreement, plaintiff's complaint alleges that the defendant "willfully and unlawfully breached the aforesaid agreement by refusing to permit plaintiff to perform thereunder." These allegations provide a recognizable framework in which to scrutinize the prospective evidence.

What does Ducharme's declaration have to say on this point? Defendant received an unsolicited oral bid for the masonry work from

the plaintiff. The figure submitted by plaintiff was used by defendant in compiling its total bid. After defendant was awarded the prime contract, it sent to plaintiff a form of subcontract agreement "for the purpose of determining the terms and conditions" of its offer of performance. There was then an exchange of writings which led to preparation of the document which was finally sent to plaintiff. Plaintiff signed the agreement and returned it to defendant. Defendant never signed it but instead informed the plaintiff that plaintiff could not proceed with the masonry work because, through defendant's inadvertence, plaintiff had not been scheduled as a subcontractor on the defendant's bid proposal submitted to the school district and therefore could not legally be utilized on the project.

These are the stated facts according to the defendant. ▮ Do they support a legal conclusion that no contract was entered into? We hold that they do. From the details of the transaction related by Ducharme, it can reasonably be *inferred* that the intent of the parties was that the terms of their agreement were to be reduced to writing. In ruling upon motions for summary judgment, the trial court is now permitted to draw inferences from related facts set forth in the declarations. According to the late Justice Kerrigan in *Hale* v. *George A. Hormel & Co.,* 48 Cal.App.3d 73, 81 [121 Cal.Rptr. 144], ". . .'the court [in passing on motions for summary judgment] is not limited to a search for "facts" regarding a particular issue but may draw inferences regarding that issue from related facts set forth in the affidavits. . . .' (*People* v. *Rath Packing Co.,* 44 Cal.App.3d 56, 61-64 [118 Cal.Rptr. 438].)"

The presence of this inference invokes the rule that where the parties intend to reduce their agreement to writing there is no binding agreement between the parties until a written contract is signed. (*Frankenheimer* v. *Frankenheimer,* 231 Cal.App.2d 101, 108-109 [41 Cal.Rptr. 636]; *Columbia Pictures Corp.* v. *DeToth,* 87 Cal.App.2d 620, 629 [197 P.2d 580].) The evidence otherwise pointed to by the Ducharme declaration shows that no written agreement was ever signed by the defendant. As a consequence, no contract was ever entered into and accordingly there was nothing to breach. (Civ. Code, § 1550, subd. 2.)

In other words, stated in terms of the controlling precedents applicable in cases of the type at bench, the Ducharme declaration pointed to evidence which, if adduced at trial, would have provided a sufficient defense to the first count of plaintiff's complaint.

Continuing with our treatment of the first count, in terms of defendant's motion for summary judgment, even though defendant's declaration affords a legal basis upon which to support a judgment in its favor, we must now determine if the declarations filed in opposition operated to raise any triable issues of fact. The only declaration which could possibly be effective for this purpose was subscribed by C. L. Smith, an officer of the plaintiff. As earlier noted, the factual content of Smith's declaration is essentially the same as the Ducharme declaration filed in support of the motion except that Smith's included the assertion that plaintiff and defendant had "orally agreed" upon the terms and conditions of performance. For purposes of pleading, such a statement of ultimate fact although conclusionary in nature, is acceptable. However, when used in a declaration filed in opposition to a motion for summary judgment, conclusions are insufficient to raise triable issues of fact. (*McIvor* v. *Savage,* 220 Cal.App.2d 128, 134 [34 Cal.Rptr. 740].)

Thus it is here, the essence of the opposition to the motion as to the first count was that the plaintiff drew different legal conclusions or conclusions of ultimate fact from the factual transaction which both sides agreed to as to its details. With the issue in this posture, it was proper for the trial court to proceed to resolve the motion as a matter of law. (*Jones-Hamilton Co.* v. *Franchise Tax Bd.,* 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896].) In our view, for the reasons which we have stated, the trial court correctly applied the law as to the first count.

Turning to the second count, we must evaluate the defendant's declaration to determine if it points to evidence which would sustain a judgment of dismissal as to that count. Following the approach utilized in testing the evidence to be adduced in opposition to plaintiff's first count, it is first necessary to analyze the allegations of the second count.

After incorporating by reference all of the allegations of the first count, plaintiff alleged that the defendant, in computing its bid for the prime contract, utilized the figure submitted by plaintiff for the masonry subcontract. It was then alleged that defendant "negligently" failed to name plaintiff on the list of subcontractors as such lists are contemplated by section 4104 of the Government Code.[3] Plaintiff then alleged that the

---

[3] In pertinent part, section 4104 of the Government Code states:

"[A]ny person making a bid or offer to perform the work, shall, in his bid or offer, set forth:

"(a) The name and the location of the place of business of each subcontractor who will perform work or labor or render service to the prime contractor in or about the

defendants "now seek to perform the masonry work of improvement as aforesaid in violation of Government Code Section 4107,[4] all of which has resulted in damages to plaintiff in the sum of $24,114.00." The latter section prohibits the substitution of subcontractors for those originally listed or the use of subcontractors after the award for work not scheduled under section 4104 without the consent of the awarding authority.

What does Ducharme's declaration have to say on this point? He freely conceded that through inadvertence the plaintiff was not scheduled as a subcontractor on the bid proposal form provided by the school district. Nevertheless, defendant did include plaintiff on the list of subcontractors compiled and submitted to the architects as required by the general conditions of the prime contract. The architects would not approve the bid because of the inclusion thereon of plaintiff. Defendant affirmatively attempted to persuade the architects and the school district to agree to include plaintiff as the masonry subcontractor, but without success. Under those circumstances defendant informed the plaintiff that it could not perform the masonry work on the project.

■ In our view, these facts support a conclusion that defendant was likewise not liable on the second cause of action. More accurately stated, because the facts as recited in the Ducharme declaration are essentially those which are pleaded by the plaintiff, it is our view that the second count failed to allege facts sufficient to constitute a cause of action. This precise point was raised by the filing of a demurrer, and although the demurrer was never heard, we are not precluded from considering such infirmity at this stage of the proceedings. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 808, p. 2418.)

We should note here that the Supreme Court in *Eagle Oil & Ref. Co.* v. *Prentice,* 19 Cal.2d 553 [122 P.2d 264], stated that "[i]t is not the purpose of the procedure under section 437c [Code Civ. Proc., the summary judgment statutory authority] to test the sufficiency of the pleadings." (*Id.,* at p. 560.) This rule however, is for application in a narrow context. In *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, Justice Sullivan deals

construction of the work or improvement . . . in an amount in excess of one-half of 1 percent of the prime contractor's total bid.

"(b) The portion of the work which will be done by each such subcontractor under this act. The prime contractor shall list only one subcontractor for each such portion as is defined by the prime contractor in his bid."

[4]In pertinent part section 4107 of the Government Code reads:

"No prime contractor whose bid is accepted shall:

"(a) Substitute any person as subcontractor in place of the subcontractor listed in the original bid . . . ."

with the matter of a plaintiff's contention that the trial court erred in granting a summary judgment *because the complaint was regular on its face and therefore raised issues of fact.* In so doing, he invokes Chief Justice Traynor in the case of *Coyne* v. *Krempels,* 36 Cal.2d 257, 262 [223 P.2d 244], where the latter declared, "In effect, it is contended that a motion for summary judgment cannot be granted unless the pleadings of the party opposing the motion are insufficient to state a cause of action or defense, for under defendant's contention a sufficient pleading raises a triable issue of fact requiring the denial of the motion." (Cited in *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, 595-596.)

It was in that context that the rule in *Eagle Oil & Ref. Co.* v. *Prentice, supra,* 19 Cal.2d 553, was cited, followed by the further observation that, "The procedure for the entry of a summary judgment provides a method by which, if the pleadings are *not* defective, the court may determine whether the triable issues apparently raised by them are real or merely the product of adept pleading." (*Coyne* v. *Krempels, supra,* 36 Cal.2d 257, 262; italics added.) This language is relied upon by Justice Sullivan in *Cornelison* v. *Kornbluth, supra,* 15 Cal.3d 590, at page 596, to lay at rest a similar contention made in that case.

However, that is not this case. Here *we do not have* "adept" pleading, but rather a failure by the party *opposing* the motion for summary judgment to plead a cause of action. ▮ As in the case at bench, a motion by a *defendant* under section 437c of the Code of Civil Procedure necessarily includes a test of the sufficiency of the complaint, and the failure of the second count to state a cause of action was essentially a part of the basis for granting the defendant's motion. Motions for summary judgment in such situations have otherwise been allowed as being in legal effect motions for judgment on the pleadings. (*Magna Development Co.* v. *Reed,* 228 Cal.App.2d 230, 234 [39 Cal.Rptr. 284].)

We address now the reason why the second count was legally insufficient to state a cause of action. The charging allegation is that the defendant "negligently" failed to list plaintiff as one of the subcontractors on the bid proposal form submitted by defendant to the school district. As a matter of actual causation, there is no question but that this failure to list the plaintiff later precluded plaintiff from performing the masonry work on the project. This result followed from the impact of section 4106 of the Government Code as noted at the outset. The question to be answered then is whether there existed a duty owed plaintiff by defendant such as would be breached by reason of a

*negligent* omission of plaintiff's name from the list of subcontractors. A guide to the answer to that question has only been partially sketched in the decided cases.

At least in the subject matter area of contracts, it has been held that no *contractual* relationship is created between the subcontractor and general contractor because the latter utilized a bid of the former in compiling and submitting a bid for the prime contract. (*Klose v. Sequoia Union High School Dist.,* 118 Cal.App.2d 636, 640-641 [258 P.2d 515].) The *Klose* decision was the subject of extended analysis and explanation in the leading case of *Southern Cal. Acoustics Co. v. C. V. Holder, Inc.,* 71 Cal.2d 719 [79 Cal.Rptr. 319, 456 P.2d 975].) In the course of the opinion in that case, Chief Justice Traynor states, "In the absence of an agreement to the contrary, listing of the subcontractor in the prime bid is not an implied acceptance of the subcontractor's bid by the general contractor. [Citations, including *Klose v. Sequoia Union High School Dist., supra,* 118 Cal.App.2d 636.] The listing by the general contractor of the subcontractors he intends to retain is in response to statutory command (Gov. Code, § 4104) and cannot reasonably be construed as an expression of acceptance. [Citations.]" (*Id.* at pp. 722-723.)

In *Southern Cal. Acoustics Co.* even the *listing* of the subcontractor failed to create a contractual relationship between the sub and the prime. *A fortiori, a failure to list* could not create such a relationship. However, the second count in the case at bench pleaded negligence as the theory of liability and this requires further comment.

In *Southern Cal. Acoustics Co.,* the plaintiff subcontractor *was* listed on the general contractor's bid. After the defendant general contractor's bid was accepted, a local trade newspaper, widely circulated among subcontractors, reported this award and included the list of subcontractors, including plaintiff Southern California Acoustics Co., Inc. Plaintiff read the newspaper report and, in reliance upon it, refrained from bidding on other jobs in order to remain within its bonding capacity.[5] However, for the stated reason that it had mistakenly listed plaintiff instead of the acoustical tile subcontractor intended to be retained, the defendant general contractor requested the school district's permission to delete the

---

[5]Bonding capacity is a real and sometimes harsh fact of life in the construction industry. Generally, it is the maximum aggregate dollar amount of outstanding contracts for which a surety company will write lien and completion bonds. Of importance here is the further reality that all in the industry realize that all others are constantly having to cope with the problem of this ceiling on their operations, including the fact that the maximum aggregate noted includes offers outstanding and awaiting acceptance.

plaintiff as the acoustical tile subcontractor in favor of the one intended. The school district consented to the change, and the substitution was made.

After an unsuccessful effort by petition for a writ of mandate to compel the school district to rescind its consent to the change, the plaintiff filed suit against the general contractor and the school district. The case went to the Supreme Court on the basis of demurrers by both defendants which were sustained. The Supreme Court affirmed as to the school district but reversed as to the general contractor, holding that the subcontractor had pleaded a cause of action against the general contractor.

. The reasoning of the decision is obedient to a change in the statute here involved. The facts in *Klose* v. *Sequoia Union High School Dist., supra,* 118 Cal.App.2d 636, were the same as those in *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc., supra,* 71 Cal.2d 719, although the issue in the former was presented by a petition for writ of mandate. In denying relief, the court in *Klose* construed the then language of subdivision (d) of section 4104 of the Government Code which, by its terms, authorized the substitution of another for a subcontractor who failed to execute a written contract, as *not* limiting the awarding authority's discretion to consent to a substitution of subcontractors in *other* factual situations. It buttressed its holding by observing that the purpose of these sections of the Government Code was not to grant rights to subcontractors but to afford an opportunity to public bodies awarding construction contracts to investigate and approve the subcontractors initially scheduled and any proposed substitutions. (*Klose* v. *Sequoia Union High School Dist., supra,* 118 Cal.App.2d 636, 641.)

The Legislature in 1963 finally responded to the decision in *Klose* (decided June 23, 1953) by enacting the Subletting and Subcontracting Fair Practices Act (Gov. Code, § 4100 et seq.). The preamble is contained in Government Code section 4101[6] which clearly indicates that the act is also for the benefit of subcontractors as well as public awarding authorities. It also enacted Government Code section 4107 in its present form which, as already noted, clearly limits the right of a

[6]Section 4101 of the Government Code provides:

"The Legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration, and repair of public improvements often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among prime contractors and subcontractors, and lead to insolvencies, loss of wages to employees, and other evils."

general contractor to make substitutions of subcontractors and limits the discretion of the awarding authority to consent to such substitutions to those circumstances specified in the statute. (Circumstances not present either in *Southern Cal. Acoustics Co. v. C. V. Holder, Inc., supra,* 71 Cal.2d 719, or in the case at bench.)

Because of this change in the law, Chief Justice Traynor observed, "Since the purpose of the statute is to protect both the public and subcontractors from the evils of the proscribed unfair bid peddling and bid shopping (Gov. Code, §§ 4100, 4101), we hold that it confers the right on the listed subcontractor to perform the subcontract unless statutory grounds for a valid substitution exist. Moreover, that right may be enforced by an action for damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had he not wrongfully been deprived of the subcontract. [Citations.] Accordingly, plaintiff has stated a cause of action against defendant Holder for breach of section 4107. [Fn. omitted.]" (*Southern Cal. Acoustics Co. v. C. V. Holder, Inc., supra,* 71 Cal.2d 719, 727.)

In the construction industry, the *Southern Cal Acoustics Co.* decision was widely hailed as the Magna Carta for subcontractors, but its application is impliedly limited. The crux of the holding is found in Chief Justice Traynor's analogizing of the statutory posture of the subcontractor to the promisee's position under the doctrine of promissory estoppel as set forth in section 90 of the Restatement of Contracts[7] which he affirmed as the law in California. (*Id.,* at p. 723.)

While the opinion may not be as explicit as some would prefer on this point, we see it as implicit to the decision that the theory of action approved in *Southern Cal. Acoustics Co.* is akin to promissory estoppel. The opinion on the one hand observes that the complaint did not allege facts showing any *promise* by the defendant Holder upon which the plaintiff relied to its detriment. However, on the other, the eventual holding was that a cause of action had been stated and that the subcontractor's right involved "may be enforced by an action for damages against the prime contractor to recover the benefit of the bargain the listed subcontractor would have realized had he not

---

[7]Section 90 of the Restatement of Contracts reads:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

wrongfully been deprived of the subcontract." (*Id.,* at p. 727.) Stated in other terms, it appears to us that the mere *listing* of the subcontractor in *Southern Cal. Acoustics Co.,* in the absence of the injurious reliance by the subcontractor upon such listing, would not have afforded the predicate for judicial relief. However, the occurrence of the listing coupled with the subcontractor's injurious reliance upon it, in Chief Justice Traynor's view, operated to provide a proper basis on which to seek judicial relief.

We have found it necessary to go into this analysis of the holding in *Southern Cal. Acoustics Co.* in order to demonstrate where the pleading by plaintiff of its second count in the case at bench fell short. Given the appropriate facts otherwise as hereinafter noted, we see no logical restriction upon the rationale of the *Southern Cal. Acoustics Co.* holding which would limit it only to cases where the subcontractor was *listed* and then deleted for reasons not permitted by the statute. Assuming a negligent (inadvertent) failure to list a subcontractor as here, we can envision a case where a subcontractor would submit a bid and where, because of the legal climate prevailing by reason of the provisions of section 4107 of the Government Code, there could occur the same kind of injurious reliance as found in *Southern Cal. Acoustics Co.* Could such a case be pleaded, we think the pleader would be in court. However, no such facts were pleaded by plaintiff in its second count, and so our holding then is that to allege a negligent omission to schedule a subcontractor in a section 4104 context, without more, does not state a cause of action.

In the case at bench, plaintiff in effect argued that defendant, solely by reason of the submission to him of the unsolicited bid by plaintiff (a bid relied upon by defendant in calculating the figure submitted to the school district), owed plaintiff a *duty of care* to list plaintiff as the masonry subcontractor. In ruling that there was no such duty, we have been mindful of the criteria set forth in *Derrick* v. *Ontario Community Hospital,* 47 Cal.App.3d 145 [120 Cal.Rptr. 566], as the basis for evaluating whether to see a duty imposed on a party because of the kind of oversight here alleged. As observed in *Derrick,* "[a]nalysis of liability for negligence in terms of common law 'duty' has been criticized as a question-begging process. 'The assertion that liability must . . . be denied because defendant bears no "duty" to plaintiff "begs the essential question—whether plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . It [duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself . . . . But it should be

recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." [Citation omitted.]' [Citation.] [¶] The principal policy considerations are: '[1] the foreseeability of harm to the plaintiff, [2] the degree of certainty that the plaintiff suffered injury, [3] the closeness of the connection between the defendant's conduct and the injury suffered, [4] the moral blame attached to the defendant's conduct, [5] the policy of preventing future harm, [6] the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and [7] the availability, cost, and prevalence of insurance for the risk involved.' [Citations.]" (*Derrick* v. *Ontario Community Hospital, supra,* 47 Cal.App.3d 145, 152-153.)

When the omission by defendant in the case at bench is weighed against the seven factors noted in *Derrick,* it is our considered view that the net balancing of such factors results in holding against plaintiff, keeping in mind that all plaintiff has complained of is loss of profits because of his not being able to perform the masonry phase of the project. Again, if he had pleaded any kind of injurious reliance based upon his reasonable expectations of being listed as the masonry subcontractor, a different case would have been presented for decision.

Having decided that the second count fails to state facts sufficient to constitute a cause of action, it is unnecessary to go into the question of whether the counterdeclaration filed by plaintiff operated to raise a triable issue of fact. ■ As already noted, in the instance of the second count, the motion for summary judgment in effect operated as a motion for judgment on the pleadings, a motion which fulfills the office of a general demurrer to test the complaint's sufficiency to state a cause of action. (See *Budrow* v. *Wheatcraft,* 115 Cal.App.2d 517, 522 [252 P.2d 637].)

The judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 3, 1977.