[Civ. No: 22587. Fourth Dist., Div. One. Nov. 3, 1981.]

GOODALL'S CHARTER BUS SERVICE, INC., Plaintiff and Appellant, v.
SAN DIEGO UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

COUNSEL

Davies, Barwick & Knowlton and Kenneth A. Barwick for Plaintiff and Appellant.

McCormick & Royce and Jack B. Winters, Jr., for Defendant and Respondent.

OPINION

**BROWN (Gerald), P. J.**—Goodall's Charter Bus Service, Inc., appeals the judgment dismissing its lawsuit against the San Diego Unified School District (School District) after the court granted the School District's motion for summary judgment and denied Goodall's motion for leave to amend its complaint.

Goodall's provides bus services under a contract with the School District. In order to improve service, in late 1974 or early 1975 during negotiations for the contract, the School District told Goodall's it would be necessary for Goodall's to install a two-way radio system for communication between its drivers and dispatchers. The School District also proposed to monitor these communications. Goodall's agreed to install a radio system but did not consent to the monitoring. Goodall's began providing bus services to the School District under the contract in June 1976. After obtaining a business radio frequency and a license from the Federal Communications Commission, Goodall's installed and began

using a two-way radio system in its buses. The School District then learned Goodall's frequency, bought a crystal tuned to that frequency, and placed it in the School District's scanner. The School District began monitoring Goodall's radio broadcasts about November 1, 1975. From the monitoring the School District learned which of Goodall's buses had arrived late and, based on this information, assessed contractual penalties for late arrivals. Goodall's learned of the monitoring in January 1976 and demanded its cessation.

After Goodall's learned of the monitoring, it sued the School District, alleging the School District had wrongfully intercepted the radio transmissions between its dispatchers and drivers during November and December 1975 and January 1976. Goodall's based its lawsuit on a federal statute authorizing a person whose "oral communications" have been unlawfully intercepted to bring a civil action for damages (18 U.S.C. § 2520). The statute defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." (18 U.S.C. § 2510(2).) To maintain a cause of action under the statute, the plaintiff's subjective expectation of privacy in his oral communications is not sufficient; the expectation must be reasonable (*United States* v. *Hall* (9th Cir. 1973) 488 F.2d 193, 196).

The School District moved for summary judgment. The superior court found no triable factual issue with respect to the reasonableness of Goodall's expectation of privacy in its radio transmissions and concluded Goodall's broadcasts were not "oral communications" within the meaning of the statute. The court granted the motion for summary judgment, and Goodall's appeals.

The court may grant a summary judgment favoring a defendant where the plaintiff's action has no merit and the defendant is entitled to judgment as a matter of law (Code Civ. Proc., § 437c). ■ "If the defendants' declarations in support of a motion for summary judgment ... demonstrate an absence of an essential element of plaintiff's case, and the plaintiff's declaration in reply does not show that a triable issue of fact with respect to ... that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted." (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].) Here the summary judgment for the School District was appropriate only if

its declarations established Goodall's could not have had a reasonable expectation of privacy in its radio broadcasts, and Goodall's declarations in reply raised no triable issue of fact with respect to reasonableness.

The reasonableness of Goodall's expectation of privacy depends, in the first place, on the nature of the medium it used for its communications: "Broadcasting communications into the air by radio waves is more analogous to carrying on an oral communication in a loud voice or with a megaphone than it is to the privacy afforded by a wire. As with any broadcast into the air, the invitation to listen is afforded to all those who can hear." (*United States* v. *Hall, supra*, 488 F.2d 193, 196.) Consequently, a person broadcasting by radio may not automatically assume his conversations will be private. If he nevertheless expects privacy, the reasonableness of his expectation depends on the circumstances under which he broadcasts (*United States* v. *Hall, supra*, 488 F.2d 193, 196).

In support of its motion for summary judgment, the School District offered extensive evidence about the nature and operations of the business radio system. Each frequency in the system is shared by several licensees; the frequency can be used by only one licensee at a time; when a licensee wishes to broadcast, he should first listen in on the frequency to make sure no other licensee is using it. From November 1975 through January 1976, at least one other licensee was using the frequency assigned to Goodall's. The names of licensees and their assigned frequencies are matters of public record; anyone can obtain this information from the local office of the Federal Communications Commission. Crystals tuned to frequencies in the business radio system are sold to the public without restriction; anyone can buy a crystal tuned to a particular frequency, place the crystal in a scanner, and listen to broadcasts on that frequency. The School District's declarations furnished an ample basis for the court to conclude Goodall's, as a licensee using a frequency in the business radio system, could not reasonably expect its broadcasts to be private.

Goodall's declarations opposing the motion establish only its subjective expectation of privacy in its radio broadcasts; the School District's declarations on the crucial issue of reasonableness remain uncontroverted. Because Goodall's declarations raise no triable issue with respect to the reasonableness of its expectation of privacy, the trial court did not err in granting the School District's motion for summary judgment.

After the School District moved for summary judgment, Goodall's sought leave to amend its complaint to state a cause of action under section 605 of the Communications Act of 1934, which prohibits disclosure of the contents of intercepted radio communications (47 U.S.C. § 605). The trial court did not err in denying Goodall's motion. It would be anomalous indeed to permit Goodall's to maintain an action for disclosure of radio broadcasts which it could not reasonably expect to be private.

The judgment is affirmed.

Cologne, J., concurred.

**STANIFORTH, J.**—I respectfully dissent.

Goodall's filed a claim against the school district based on 18 United States Code section 2510. The school district's motion for summary judgment was granted. Goodall's then attempted to amend its complaint to state a claim under 47 United States Code section 605. The motion to amend was denied. This appeal followed.

FACTS

Goodall's and the school district entered into a contract for bus service. The school district wanted the bus company to install radios in its buses so that the school district could monitor the operation of the buses. Goodall's refused to allow the school district to monitor the radios but went ahead and had them installed for its own use. The radios required special equipment to send and receive communications and a permit from the F.C.C. for operation on an assigned frequency. When Goodall's was assigned the frequency, there was one other local business also assigned to the frequency. The school district acquired the frequency assignment from the Federal Communications Commission, purchased special equipment with which to monitor the frequency and began constant surveillance. Sometime later Goodall's accidentally discovered the eavesdropping and filed suit.

The majority holds the summary judgment was proper because, as a matter of law, there is no reasonable expectation of privacy in radio broadcasts; further, there was no abuse of discretion in denying the mo-

tion. If the conclusion regarding the reasonableness of Goodall's expectation of privacy is viewed purely as a question of law, the majority opinion is technically correct. Such view, however, is too narrow, considering the liberality with which we are to consider the affidavits opposing a motion for summary judgment and the case law emphasizing factual analysis of questions centering on the meaning of "oral communications" under the statute. I also think a colorable cause of action was proposed in the amendment and it should have been allowed.

DISCUSSION

I

The Summary Judgment

The Code of Civil Procedure requires a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c.) Our court has recently reviewed when summary judgment should be granted: "Whether a summary judgment should be granted turns on the trial court's consideration of '"*whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself* .... The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial."' (*Corwin v. Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 ....) '[*T*]*he affidavits of the moving party are to be strictly construed and those of the opponent liberally construed.*' (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 873 ....) 'Summary judgment may only be granted if no material fact issue remains in the case. Where affidavits have been submitted by the opposing parties, *any doubts as to whether summary judgment is proper should be resolved against the moving party.* [Citation.]' (*Buehler v. Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 ....)" (*Smith v. Scrap Disposal Corp.* (1979) 96 Cal.App.3d 525, 528 [158 Cal.Rptr. 134].)

To determine whether a triable issue exists, one must look at the elements necessary to state the cause of action and the facts set out in the affidavits of the parties. Doubts about the sufficiency of the affidavits point away from granting the motion.

A cause of action under 18 United States Code section 2510 et seq. consists of four elements: an interception of communication made with the use of an electronic or mechanical device; the interception was willful; the communication intercepted was an "oral communication";[1] and the interception occurred on the premises of a business which affects interstate commerce. (*United States* v. *Duncan* (4th Cir. 1979) 598 F.2d 839, cert. den. 444 U.S. 871 [62 L.Ed.2d 96, 100 S.Ct. 148].) Section 2520 of the act provides for civil damages by "[a]ny person whose ... oral communication is intercepted ... against any person who intercepts ... such communications ...." The statute prohibits all interceptions except those provided for in the act and provides "a comprehensive proscription of electronic surveillance." (*Kratz* v. *Kratz* (E.D.Pa. 1979) 477 F.Supp. 463, 470.)

The instant case turns on whether Goodall's radio communication is an "oral communication" entitled to protection under the statute. The summary judgment was granted on the grounds that Goodall's radio broadcasts were not "oral communications" because Goodall's had no reasonable expectation of privacy. The reasonableness of one's expectation of privacy depends on the nature of the broadcast. (*United States* v. *Hall* (9th Cir. 1973) 488 F.2d 193, 196.) In *United States* v. *Hall, supra,* at page 198, the court stated: "[T]he critical question [is] whether appellants had a reasonable expectation that the communications were not subject to interception. This too is an issue of fact to be determined by the trial court ...."

The Code of Civil Procedure (§ 437c) requires that the summary judgment motion be reviewed through the affidavits of the parties. The standard of scrutiny for the moving party's affidavit is different than for the opposing party's counteraffidavit. The majority opinion focuses on the affidavits of the moving party. In summary judgment law the ultimate focus is on the counteraffidavit. The affidavit from Goodall's was a declaration from its president; when he got his frequency allocation he was unaware other persons would be able to monitor his broadcasts; he expected his communication to be private and he never consented to the school district's monitoring. We are permitted to draw inferences from the declaration. (*C. L. Smith Co.* v. *Roger Ducharme,*

---

[1]Section 2510, "Definitions," provides: "As used in this chapter... 'oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."

*Inc.* (1977) 65 Cal.App.3d 735, 742 [135 Cal.Rptr. 483].) The inference to be drawn in this case is that it is not unreasonable for an ordinary business president in these circumstances, unfamiliar with sophisticated equipment and having denied permission to monitor, to expect that these broadcasts would not be intercepted. Goodall's affidavit must be liberally construed and, "[i]f, considered alone, it shows facts sufficient to constitute a cause of action or defense, its averments *must be accepted as true* for the purposes of the motion and summary judgment must be denied." (4 Witkin, Cal. Procedure (2d ed. 1971) p. 2840.) The court must find issues rather than determine them. (See generally Witkin, *supra*, p. 2840 for the long line of California cases.)

Determining whether summary judgment is proper is a two-step process. First, the moving party's affidavit, strictly construed, must show that it is entitled to judgment. Second, the affidavit of the opposing party, liberally construed, must reveal that there is no triable issue. (*C. L. Smith Co.* v. *Roger Ducharme, Inc., supra,* 65 Cal.App.3d 735, 741; *Stationer's Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].) It is on the second step that I disagree with the conclusion of the majority. The question is whether it is unreasonable for an ordinary businessman to expect that these radio broadcasts would not be intercepted. *United States* v. *Hall, supra,* 488 F.2d 193, holds that reasonableness depends upon the nature of the broadcast. To hold that there is no expectation of privacy in radio transmissions, as a matter of law, looks like a determination of the ultimate fact in the case.

"In theory, a determination is one of ultimate fact if it can be reached by logical reasoning from the evidence, but one of law if it can be reached only by the application of legal principles." (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602].) Whether or not Goodall's expectation was reasonable "flows from the evidence itself" after a consideration of the nature of the broadcast, public access to the frequency, accessibility to interception equipment, etc. This type of reasoning is consistent with *United States* v. *Hall, supra,* and seems to present a triable issue in this case.

Even though the *Hall* court concluded that there was no reasonable expectation of privacy in that case, *Hall* does not compel us to reach the same conclusion here. The nature of the broadcast in *Hall* was

much more public. The radio in *Hall* was a standard eight-band radio, sold over the counter to the general public, and often used by the public to monitor police and fire channels. This type of radio receives a wide variety of frequencies and the frequencies are openly and constantly monitored by many people. The equipment in this case is more exclusive, special permits are required, there are a limited number of users per frequency and the standard operating procedure is to listen in solely for determining whether the frequency is in use before broadcasting. Goodall's argues, with an effective analogy to a telephone party line, that the existence of permitted cousers does not destroy privacy expectations as to nonauthorized eavesdroppers. (See *Bianco v. American Broadcasting Companies* (N.D.Ill. 1979) 470 F. Supp. 182, 185.)

One case (*United States v. Carroll* (D.D.C. 1971) 337 F.Supp. 1260) has determined that no privacy interest exists as a matter of law when verbal conversation was recorded by a standard microphone in an adjoining room. The microphone was no more sensitive than the human ear and in fact the person operating the recorder also heard the conversation. However, in concluding its opinion the court stated that the times where reasonableness could be conclusively determined as a matter of law were limited: "This is a very narrow and unusual case. By stipulation, there is no question of contrivance by the recorder; he did not eavesdrop in a position where an individual would not normally be expected to be. In addition, there is no question of augmentation of the overheard conversation by means of an electronic device more sensitive than the human ear or by a device in an unauthorized place in order to pick up what could not be heard easily by an uncontriving hearer.... If any of these issues were in doubt, factual questions would be present and, therefore, a trial might be necessary. It is only in the setting where there is no contrivance, no augmentation, and an admitted unaided overhearing that a purely objective test will be decisive. Thus the facts demand as a matter of law that the Court hold there could not be an expectation of privacy under the circumstances of this particular case." (*Id.*, at pp. 1263-1264.) The case at bench does not present such clearcut facts.

Finally, I think the majority opinion is correct if it only holds that summary judgment is appropriate when the facts are undisputed and the law is clear that the judgment should be for the school district. Unfortunately, the trial court drew the line too tightly by reaching a questionable legal conclusion without a trial and the result on appeal

appears to be a per se rule that radio broadcasts are not entitled to protection under the statute.

## II

## The Attempt to Amend

The majority holds that no cause of action is stated under 47 United States Code section 605 because it would be anomalous to permit an action for the disclosure of broadcasts in which there is no reasonable expectation of privacy. The relevant part of the statute reads: "No person not being authorized by the sender shall intercept any radio communication and divulge ... the ... contents ... of such intercepted communication to any person.... No person having received any intercepted radio communication ... knowing that such communication was intercepted, shall divulge ... the ... contents ... or use such communication ... for his own benefit or for the benefit of another not entitled thereto...." Research has unearthed no case which adds the element of a reasonable expectation of privacy to the cause of action as stated in the statute. The school district cites *Simmons* v. *Southwestern Bell Tel. Co.* (W.D.Okla. 1978) 452 F.Supp. 392, affd. 611 F.2d 342, for this proposal but *Simmons* is no support.

In *Simmons* a telephone employee used the telephone lines at a "test desk" for personal telephone calls. The employee was instructed that personal calls were not to be made on these lines and that the lines were monitored. The employee continued to use the telephone line, the telephone company monitored the calls and the employee sued under 47 United States Code section 605. The court held that the employee did not have a cause of action because the statute provided an exception for the telephone company's monitoring of its own lines. The court further held that there was no provision for a private cause of action under 47 United States Code section 605 (see discussion following).

At least two courts have stated that this statute does apply to two-way radio broadcasts without reference to an objective expectation of privacy in the broadcast. In *United States* v. *Laughlin* (D.D.C. 1964) 226 F.Supp. 112, the court wrote: "[I]t should be noted that two-way radio transmissions, which may easily be monitored by anyone wishing to buy a receiver tuneable to the particular frequency, are protected by 47 U.S.C. § 605." (*Id.*, at p. 114.) In *United States* v. *Fuller* (D.C. Cal.

1962) 202 F.Supp. 356, the court applied section 605 to a news gathering service which monitored police and fire frequencies and reported them to news agencies. The court wrote: "The main purpose of Section 605 is to protect the means of communication, so that messages transmitted by means of radio ... will be protected from interception and divulgement by unauthorized persons. [Citations.]" (*Id.*, at p. 358.) It is noteworthy that both this case and *United States* v. *Hall, supra,* 488 F.2d 193, concern the interception of eight-band radio frequencies because a cause of action is stated under 47 United States Code section 605 even though another federal case has held that there was not a reasonable expectation of privacy with this type of broadcast due to the public availability of monitoring devices and the common tendency to monitor these frequencies. I would therefore conclude that a reasonable expectation of privacy in the broadcast is not necessary to state a claim under 47 United States Code section 605.

The statute is concerned with two elements, the unauthorized interception of radio communication and some sort of publication. The courts are to give section 605 its plain meaning. (*Benanti* v. *United States* (1957) 355 U.S. 96, 100 [2 L.Ed.2d 126, 130 78 S.Ct. 155]; *United States* v. *Dote* (7th Cir. 1966) 371 F.2d 176.) The proposed amendment alleged that the school district employee monitored Goodall's radio transmissions and divulged the contents of the communication. Goodall's argues that the amendment is proper because the facts upon which to base the claim were unknown until the discovery proceedings and therefore could not have been made in the original complaint. Under the plain language of the statute and California's liberal policy of allowing amendments to pleadings, it would seem that amendment was proper.

The trial court denied leave to amend because the trial court determined that the communication involved had to have been interstate communication. The cases that have been most frequently litigated on this issue involve either telephone communication or television broadcasting. The connection to interstate communication with either of these two forms of broadcasting seems clear because the wires, frequencies and networks are national even when isolated instances of communication are local. In the instant case the broadcast range of Goodall's radio would possibly not exceed the boundaries of the state and the connection to interstate communication seems tenuous. This, however, is a factual matter not to be determined at the pleading stage.

The school district argues that there is no private cause of action under 47 United States Code section 605 based on the 1978 case *Simmons* v. *Southwestern Bell Tel. Co., supra,* 452 F.Supp. 392. There is a split in authority on this point but the action is permitted under recent cases. Soon after the *Simmons* case, decided in Oklahoma, a New York court held that there was a private cause of action in *Home Box Office, Inc.* v. *Pay TV of Greater N.Y.* (E.D.N.Y. 1979) 467 F.Supp. 525. The Ninth Circuit recently noted "[t]he courts have long recognized the existence of a private right of action under section 605. [Citations.]" (*National Subscription Television* v. *S. & H. TV* (9th Cir. 1981) 644 F.2d 820, 821, fn. 1.) Although Goodall's case is unusual, this is no basis for sustaining for a general demurrer.

### Conclusion

I think the trial court was too parsimonious. Goodall's should be allowed to try its case.

A petition for a rehearing was denied November 19, 1981, and appellant's petition for a hearing by the Supreme Court was denied January 7, 1982. Bird, C. J., was of the opinion that the petition should be granted.