[No. B039633. Second Dist., Div. Three. May 28, 1991.]

RAYMOND WINSTON, Plaintiff and Appellant, v.
NATIONAL BROADCASTING COMPANY, INC., et al., Defendants and
Respondents.

**COUNSEL**

Gipson, Hoffman & Pancione, Kenneth I. Sidle, Steven B. Rogers and Julia L. Ross for Plaintiff and Appellant.

Kinsella, Boesch, Fujikawa & Towle and Donald L. Zachary for Defendants and Respondents.

**OPINION**

**DANIELSON, J.**—Raymond Winston (Winston) appeals from a judgment based on the grant of a motion for summary judgment on his complaint in favor of National Broadcasting Company, Inc., and Reg Grundy Production, Inc. (collectively, NBC).

We affirm the judgment.

### FACTUAL AND PROCEDURAL STATEMENT

On June 25, 1985, Winston filed an action against NBC arising from the latter's refusal to pay Winston the cash he won while a contestant on NBC's game show Sale of the Century. The verified complaint pleaded seven causes

of action, respectively, for breach of oral contract, fraud, negligent misrepresentation, intentional infliction of emotional distress, invasion of privacy (appropriation of Winston's name and likeness), invasion of privacy (false light), and invasion of privacy (commercial appropriation; Civ. Code, § 3344).

On December 24, 1986, NBC answered the complaint by generally denying the material allegations and by asserting 17 affirmative defenses.

On January 7, 1987, NBC filed a cross-complaint for damages against Winston. The five causes of action were, respectively, for breach of written contract, fraud/misrepresentation, negligent misrepresentation, breach of covenant of good faith and fair dealing, and bad faith denial of contract.

In his answer filed March 6, 1987, Winston denied the material allegations and asserted five affirmative defenses.

On May 27, 1987, NBC filed a motion for summary judgment and, alternatively, for summary adjudication of certain issues. The motion was accompanied by a statement of uncontroverted material facts.

In sum, NBC argued that the undisputed facts showed that Winston forfeited any right to his "winnings" on the game show because of his fraudulent misrepresentations regarding his eligibility to appear on the show Sale of the Century, and that pursuant to the contract between them NBC had the unqualified right to use his name and likeness in advertising the show and to broadcast those episodes in which he appeared.

Based on the following facts NBC argued that Winston was not eligible to appear on the NBC game show Sale of the Century on November 10, 11, and 13, 1983, and, thus, was disqualified from receiving the prizes he had won on those dates on the show.

Pursuant to NBC's rules, the maximum number of audience participation or game shows, NBC or otherwise, a person was allowed to be on was three in that person's lifetime. To enforce that rule the written contract between NBC and each prospective contestant of a game show provided that the contestant understood that NBC reserved the right to require him or her to forfeit all prizes credited to the contestant if any of the representations made in the contract by him or her "are false whether by intention, inadvertence, or mistake, . . . whether or not the program on which [the contestant] appear[s] is broadcast."

In his written contract with NBC Winston expressly represented on November 10, 11, and 13, 1983, that he had been on two NBC shows: Split

Second in 1973 and 3 For The Money in 1975. He failed to disclose the fact that he had also been on the show Double Dare in 1977.

NBC asserted that Winston was not excused from disclosing that fact by virtue of his letter to NBC dated September 15, 1983, requesting NBC not to count his appearance on 3 For The Money in determining his eligibility to appear on Sale of the Century. In that letter Winston claimed that his appearance on 3 For The Money should not be counted because of irregularities in its taping.

NBC responded by letter dated October 7, 1983 (Harper letter). In that letter NBC informed Winston that due to the time lapse of eight years since that show had been aired, NBC was unable to investigate the circumstances surrounding the asserted irregularities but felt that had there been any substantive errors at the taping they would have been corrected. "As to [Winston's] request to be a contestant on SALE OF THE CENTURY, perhaps [he was] not aware that present NBC policy allows [him] to appear on three game shows in a lifetime, as long as there is a year between appearances. [NBC's] records show that [Winston] appeared on SPLIT SECOND in 1973, in addition to THREE FOR THE MONEY in 1975. [Winston was], therefore, eligible to apply to another NBC game show, unless [he had] already been a contestant in the interim."

NBC argued that the above facts showed that NBC did not by its letter dated October 7, 1983, approve of or give Winston permission to be a contestant on Sale of the Century since it had cautioned Winston that he was not eligible if he had been a contestant since his appearance on 3 For The Money in 1975 and at that time NBC did not know of Winston's appearance on Double Dare in 1977.

As for Winston's claims concerning the use of his name, likeness, and the broadcast of his appearances on Sale of the Century, NBC asserted that it had no obligation to pay defendant for such uses and broadcasts. Pursuant to his contract Winston specifically agreed that NBC "shall have unlimited and perpetual rights worldwide in all media covering everything that [Winston] say[s] and do[es] on the program," that "[t]he photographs, tapes, movies, and recordings of everything [he said] or [did] on the program will be owned by [NBC] to do with as [it wishes] at any time in the future," and that NBC "may use [Winston's] name, photographs, recordings and biographical information for advertising or publicizing the program."

On June 18, 1987, Winston filed an opposition and a separate statement of disputed facts. In his opposition Winston pointed out that no one disputed the fact he had won $83,833 in prizes, which included a $74,034 cash

component, "fair and square." In essence, Winston took the position that he had acted in good faith in dealing with NBC and that NBC was estopped from denying him his winnings.

He conceded that he had signed a document on November 10, 11, and 13, 1983; however, he characterized the document as an information and application form rather than a "Contestant Agreement." In his supporting declaration Winston stated that NBC had referred to the document as a "form" and represented to him that it was "merely a formality." No one told him the significance of the form, which he had to fill out quickly and "did not pay close attention to . . . because [his] energies and attention, as were the energies and attention of those around [him], focused on the upcoming taping."

Winston further stated that on December 2, 1983, he received a letter from Meryl Marshall (Marshall) of NBC in which she informed him NBC had learned he had been on Double Dare and that his appearance on that show made him ineligible to receive his winnings on the subject show. Winston was not concerned about this letter, because he thought Marshall did not know of his letter to NBC and the response by NBC signed by Harper.

Winston became concerned upon receipt of a second letter from Marshall, dated December 27, 1983, stating that as of January 6, 1984, he was declared ineligible to receive his prizes. However, his concern was alleviated somewhat when he received a set of luggage, his first prize.

Winston, however, did write to NBC after receipt of the two Marshall letters. In his letter[1] he again aired his complaints concerning his appearance on the show 3 For The Money and asserted that he had dealt in good faith with NBC.

In an April 4, 1984, letter Marshall informed Winston that after its investigation NBC found no merit to his claim that his appearance on 3 For The Money should be considered a "non-appearance" and that NBC's decision to declare Winston ineligible to receive his prizes from Sale of the Century "still stands."

Winston then stated in his declaration that after receipt of Marshall's third letter he consulted an attorney.

In its reply brief in support of its motion for summary judgment, filed June 25, 1987, NBC argued that the agreement signed by Winston on

---

[1]The copy of the letter in the record on appeal is not dated.

November 10, 11, and 13, 1983 was clear and unambiguous, and thus, its terms could not be varied by extrinsic matters. It further argued that the parol evidence rule barred any purported promise of NBC to Winston which contradicted those terms. NBC also asserted that Winston's estoppel claim was frivolous.

At the June 30, 1987 hearing on the motion, the court announced that summary judgment appeared to be proper in favor of NBC except that there might be a triable issue of fact concerning estoppel to assert the contract against Winston to bar him from receiving his prizes. The court was concerned that NBC may have received an anonymous telephone call about Winston's appearance on Double Dare before NBC started taping and decided not to look into a possible violation of its contestant rules until after the taping because Winston looked good, "a star." The matter was then continued for supplemental papers.

In its supplemental papers dated August 11, 1987, NBC argued that NBC did not learn about Winston's ineligibility, i.e., he had been on three prior game shows, until after all seven segments of the Sale of the Century had been taped.

In his declaration Timothy J. Sullivan (Sullivan), NBC's west coast director of compliance and practices, stated that it is the custom and practice of NBC to require each contestant to sign a "Contestant Agreement" at the beginning of the first day of taping and to resign and reaffirm the statements in such agreement if the contestant returns on subsequent days.

On November 10, 1983, all contestants were briefed on NBC game show rules, including the one that they were only allowed to appear on a total of three game shows and if they violated any NBC rule, they would not get any prizes they might win. At that time Winston signed the contestant agreement.

Although he was not picked as a contestant on that date, he returned on November 11 at which time the contestants were again briefed as to the NBC rules and Winston signed the agreement a second time. Winston appeared as a contestant that day.

When Winston returned on November 13, 1983, all contestants were briefed about the rules and Winston again signed the agreement before taping began. After his appearances were taped, Winston retired from the show as a champion.

During the next week Sullivan received a call from someone who identified himself as "Robert Jackson" (Jackson) and told Sullivan that Winston

was ineligible to appear on the Sale of the Century, because he had already appeared on three prior game shows, Split Second, 3 For The Money, and Double Dare.

After checking Winston's contestant agreement, he noted that only Split Second and 3 For The Money were listed as prior game shows. NBC records showed only those two prior shows as well.

Later that week or early the next week Sullivan telephoned Winston about the information that he had appeared on Double Dare in 1977. Winston told Sullivan that information was incorrect and that he had not appeared on Double Dare.

Sullivan then called CBS which checked its records and told Sullivan, a day or two around Thanksgiving 1983, that a Raymond Winston, Social Security number 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 had been a contestant on Double Dare. That Social Security number is the same as Winston had put on his NBC records.

Sullivan stated that NBC was faced with a difficult dilemma. On one hand NBC was faced with a violation of its eligibility rules and on the other it had seven shows " 'in the can' " ready to air.

In his declaration Joseph E. Bures, a vice-president of NBC, stated that "had NBC not aired the seven shows on which Winston was a contestant, it would have cost NBC $137,410 and, since the shows would not have been broadcast, NBC could not obtain advertising revenues to offset those costs. In short, Winston's violation of NBC's rules would have cost NBC $137,410."

On October 13, 1987, Winston filed a supplemental opposition and a supplemental separate statement of disputed material facts. Winston argued, inter alia, that triable issues of material fact remained as to whether NBC knew of his third game show appearance prior to completion of taping. He argued that the undated note written by a secretary, Deanna Benjamin, which Sullivan received prior to his telephone conversation with Jackson, raised a triable issue of fact as to whether Sullivan knew of Winston's Double Dare appearance prior to the time when taping of Winston's segments on Sale of the Century had been completed. That note, exhibit 18, recited: "Robert Jackson called & stated Ray Winston has been on the following shows: Double Dare—77 . . . Split Second—72 or 73 . . . 3 for the Money— 75. . . ."

In his supplemental declaration Winston stated that he recalled his conversation with Sullivan as having taken place in December, 1983, not mid- or

late November. He admitted that he told Sullivan he did not appear on Double Dare; however, he explained that he did not know who Sullivan was, and thus, did not want to tell a stranger anything. At that time he already had a letter from Marshall of NBC concerning his appearance on Double Dare.

In its supplemental moving papers dated October 26, 1987, NBC argued that the supposed inconsistencies in Sullivan's deposition testimony did not controvert his consistent testimony that NBC did not learn of Winston's ineligibility until after taping of Winston's segments on Sale of the Century.

At the November 2, 1987, hearing on the motion for summary judgment or summary adjudication of issues, the court stated that NBC had carried its burden to show that NBC had no knowledge of Winston's ineligibility prior to completion of taping and granted the motion for summary judgment as to the complaint.

On February 3, 1988, an order granting summary judgment as to the complaint was entered in favor of NBC.

On August 30, 1988, NBC's request for dismissal of its cross-complaint against Winston without prejudice was entered.

On November 15, 1988, a judgment was entered in favor of NBC and against Winston on the latter's complaint.

## ISSUES PRESENTED

On appeal Winston's basic contention is that summary judgment was erroneous, because triable issues of material fact remained with regard to whether NBC was estopped from enforcing the forfeiture provision of the document Winston signed as a contestant on Sale of the Century. He also asserts that the forfeiture provision constitutes a contract of adhesion, and thus, is unenforceable.

Based on our review of the record we find no merit to Winston's position.

## STANDARD OF REVIEW

■ Summary judgment is proper only if no triable issues of material fact exist. The evidence of the moving party is strictly construed and that of the responding party liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Varco-Pruden, Inc.* v. *Hampshire Constr. Co.* (1975) 50 Cal.App.3d

654, 659 [123 Cal.Rptr. 606].) For a defendant to prevail, he must conclusively negate at least one element of plaintiff's case and demonstrate that under no hypothesis is there a material factual issue. (*Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 339 [138 Cal.Rptr. 670].)

" 'If the defendants' [evidence] in support of a motion for summary judgment . . . demonstrate[s] an absence of an essential element of plaintiff's case, and the plaintiff's [evidence] in reply does not show that a triable issue of fact with respect to . . . that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted.' [Citation.]" (*Goodall's Charter Bus Service, Inc. v. San Diego Unified School Dist.* (1981) 125 Cal.App.3d 194, 197 [178 Cal.Rptr. 21].)

DISCUSSION

I.   *No Issues of Material Fact Exist Regarding Estoppel*

█    Winston initially argues that triable issues of fact exist concerning: (1) whether Winston was reasonable in relying on Harper's letter; (2) the precise nature of the document Winston signed; and (3) whether NBC knew of Winston's Double Dare appearance, and thus, his ineligibility to appear on Sale of the Century, prior to completion of taping Winston's appearances on that latter show.

Based on our review of the record we conclude Winston's contentions are patently meritless. We find, as a matter of law, that there are no triable issues of fact which would preclude NBC from enforcing its forfeiture provision in Winston's contract based on a theory of estoppel or waiver.[2] (See, e.g., *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; cf. *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 151-152 [135 Cal.Rptr. 802].)

We specifically find, as a matter of law, Winston's claim of reliance on the Harper letter is patently unreasonable. On its face the letter cautions Winston that two prior shows were acceptable but not three prior shows. It is

---

[2]Winston also claims that NBC waived the right to enforce its forfeiture provision, because NBC could have broadcast Winston's segments on Sale of the Century with a special disclaimer which would prevent the public from being misled. Winston, however, concedes that NBC chose not to do this. He cites no authority requiring NBC to follow that procedure, and thus, we reject this claim as untenable. (See, e.g., *Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873 [105 Cal.Rptr. 395].)

uncontroverted that Winston knew about his third prior show, Double Dare, yet failed to disclose that fact to Harper or anyone at NBC prior to being confronted with that fact by NBC, and then he first denied it.

We further find that, as a matter of law, there is no question about the nature of the document that Winston signed. A plain reading of the contents of that document reveals that within its four corners is an agreement by Winston that if he failed to disclose a material fact, such as the names of prior audience participation or game shows, NBC or otherwise, on which he had appeared and the years in which he appeared, he would then forfeit any prizes he won on the show. The document admits to no other interpretation and is unambiguous. Winston's asserted state of mind concerning the nature and meaning of that document is thus totally irrelevant.

We also find that no triable issue of fact exists concerning whether NBC learned about Winston's ineligibility prior to the taping of Winston's segments on Sale of the Century. Sullivan's declaration makes it clear that NBC did not know of such ineligibility until after the taping. The purported inconsistencies in Sullivan's deposition testimony relied upon by Winston fail to controvert this unequivocal declaration.

## II.    *Forfeiture Provision Is Not Contract of Adhesion*

■    Winston argues that the forfeiture provision is unconscionable both procedurally and substantively, and thus, constitutes an unenforceable contract of adhesion.

We disagree. We find, as a matter of law, that the forfeiture provision in the subject contract is not a contract of adhesion. There is nothing unconscionable about requiring a contestant who lies about his eligibility to participate in the game show to forfeit the prizes he wins as the result of such lie. (See *Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 767-768 [259 Cal.Rptr. 789].)  ■■■■  To the contrary, such a forfeiture is only equitable.[3]

---

[3]We reject as meritless Winston's argument that since NBC knew of his ineligibility before broadcast of his segments on Sale of the Century NBC was precluded from broadcasting such segments unless it paid him the use of his likeness and name during such broadcasts. The contract in question unequivocally provides that NBC owns the rights to his likeness and name with regard to his appearances on The Sale of the Century and that NBC had unlimited and perpetual rights as to everything he said and did on the program. It further provides in plain language that NBC was not obligated or required to broadcast any shows upon which he appeared. Based on the foregoing, it is clear that Winston had no right or interest in the

## DECISION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.

---

broadcast of his appearances on the Sale of the Century segments, and thus, he has no claim for compensation based on such broadcasts.